STATE OF CONNECTICUT *v.* ELTON ARLINE
(AC 22283)

Schaller, Mihalakos and Bishop, Js.

694

Argued November 18, 2002—officially released January 28, 2003

*Stephen P. Hanchuruck,* deputy assistant public defender, with whom was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Melissa L. Streeto,* special deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Gail P. Hardy,* assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Elton Arline, appeals from the judgment of conviction, rendered after a jury trial, of possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a).[1] On appeal, the defendant claims that the trial court improperly denied his motion to suppress certain evidence seized by police during a warrantless search of his person in violation of his federal and state constitutional rights. We affirm the judgment of the trial court.

---

[1] General Statutes § 21a-277 (a) provides in relevant part: "Any person who . . . possesses with the intent to sell or dispense . . . to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter . . . shall be imprisoned . . . and may be fined . . . ."

The following facts and procedural history are relevant to our resolution of the defendant's appeal.[2] The defendant was arrested on November 29, 1996, and charged with possession of narcotics with intent to sell.[3] On April 5, 2001, the defendant filed a motion to suppress certain evidence seized from his person, specifically heroin and money, during the execution of a search and seizure warrant by police at an apartment in Waterbury. In the motion, the defendant argued that the evidence seized from his person was obtained in violation of his rights under various provisions of the United States and Connecticut constitutions. On April 10 and 12, 2001, the court held a hearing on the motion.

The testimony and exhibits presented at the suppression hearing revealed the following facts. Tracy Canale, a detective with the Waterbury police department, testified that on November 29, 1996, at approximately 11:35 a.m., he and several other officers were members of a "raid team" that participated in a warrant authorized search of a third floor apartment on Elizabeth Street in Waterbury.[4] Canale and other members of the raid team, including Timothy Wright, a sergeant with the Waterbury police department, approached and knocked loudly on the rear door of the third floor apartment, and announced, "Police with a search warrant." After several seconds had elapsed without receiving a

[2] This is the defendant's second appeal in this matter. In *State* v. *Arline*, 59 Conn. App. 414, 757 A.2d 631 (2000), the defendant appealed from the judgment of conviction of possession of narcotics with intent to sell, claiming that the trial court improperly had denied his request to poll the jury upon return of the verdict. In that appeal, we reversed the judgment of the trial court and remanded the case for a new trial. Id., 416.

[3] Following our decision in *State* v. *Arline*, 59 Conn. App. 414, 757 A.2d 631 (2000), the defendant was charged in an amended substitute information, filed on April 5, 2001.

[4] Prior to departing from police headquarters, the raid team was briefed regarding the nature and the target of the search and seizure warrant. The purpose of the raid at the specified address was to search for and to seize narcotics, particularly heroin, as well as money.

response from inside, the team forcibly entered the apartment with a battering ram.

Upon gaining entry to the apartment, the team moved through a kitchen and a living room, then stopped in a bedroom where they encountered three people, including the defendant. The defendant was standing near an open window, "partially in the window looking out," then turned around, saw Canale and threw an object on the floor. Canale approached the discarded object, observed a paper wrap containing glassine bags that he believed, through his training and experience in narcotics enforcement, contained heroin.[5] Canale stood over the object to preserve it for collection while other members of the raid team entered the room. Thomas Deely, another detective with the Waterbury police department, ultimately seized the object and processed it as evidence.

Wright entered the bedroom just behind Canale, and Canale informed him that the defendant was under arrest. Wright then handcuffed the defendant and patted him down for weapons.[6] After determining that there were no weapons on the defendant's person, Wright searched and found, in the pockets of the defendant's pants, a pouch containing seven glassine bags of a white powdery substance that Wright believed was heroin.[7] Wright also found a large sum of cash bound in four separate rolls with elastic bands inside the defendant's pockets.[8] Wright seized the money, the pouch and its

[5] Evidence at trial established that the object tossed to the floor by the defendant contained thirty glassine packets containing a powdery substance and that the powdery substance contained the narcotic heroin.

[6] Wright testified that he handcuffed the defendant because "[i]t was indicated to [him] by Detective Canale that [the defendant] was under arrest and otherwise [the defendant] still would have been handcuffed for officers' safety."

[7] Evidence at trial established that the substance contained the narcotic heroin.

[8] Evidence at trial established that the total sum of money seized from the defendant's person was $789.

contents from the defendant and gave them to Deely to process as evidence.[9]

On April 12, 2001, at the conclusion of the suppression hearing, the court denied the defendant's motion in an oral decision, concluding that the evidence seized from the defendant's person was obtained through a "valid search, as a search incident to an arrest." The court upheld the validity of the search on the ground that probable cause for the defendant's arrest, independent of the search, existed when Canale observed the defendant throw to the floor an object containing what appeared to be narcotics. The court stated that "an arrest does not have to chronologically precede the search in order for the search to be valid . . . provided that the arrest and the search are substantially contemporaneous and are integral parts of the same incident." The court, therefore, determined that when Wright entered the room and was told by Canale that the defendant was under arrest, the search of the defendant's person was a valid search incident to a lawful arrest.

Thereafter, on April 17, 2001, following a jury trial, the defendant was convicted of possession of narcotics with intent to sell in violation of § 21a-277 (a). On May 22, 2001, the defendant was sentenced to a term of twelve years imprisonment, execution suspended after seven years, with five years probation.[10] This appeal followed.

The defendant's sole claim on appeal is that the court improperly denied his motion to suppress the evidence

---

[9] Evidence at trial established that Nicholas DeMatteis, a detective with the Waterbury police department, made the formal arrest of the defendant that day because he was the officer in charge of the case.

[10] Prior to sentencing, on May 22, 2001, the defendant filed a motion for a new trial on multiple grounds, including that he was denied a fair trial when the court denied his motion to suppress. The court denied the motion for a new trial as untimely. See Practice Book §§ 42-53, 42-54.

seized from his person[11] in violation of his rights under the fourth amendment to the United States constitution and article first, § 7, of the constitution of Connecticut.[12] Specifically, the defendant argues that the search of his pockets by Wright exceeded the bounds of a lawful *Terry*[13] "stop and frisk" because the patdown search did not yield any weapons or contraband. Furthermore, the defendant argues that Wright lacked probable cause to conduct a search incident to a lawful arrest because Wright lacked any basis to believe that the defendant

[11] The defendant made no claim, and does not claim on appeal, that the object containing the heroin that he tossed to the floor should be suppressed.

[12] The fourth amendment to the United States constitution, made applicable to the states through the fourteenth amendment, provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The constitution of Connecticut, article first, § 7, provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

[13] "Under *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), an officer may forcibly stop a suspect and engage in a 'stop and frisk' investigation if the officer has a *reasonable and articulable suspicion* that the suspect has committed or is about to commit a crime. [A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." (Emphasis added; internal quotation marks omitted.) *State* v. *Czyzewski*, 70 Conn. App. 297, 303 n.7, 797 A.2d 643, cert. denied, 261 Conn. 911, 806 A.2d 49 (2002). "If, during the course of a lawful investigatory detention, the officer reasonably believes that the detained individual might be armed and dangerous, the officer may undertake a patdown search to discover weapons." (Internal quotation marks omitted.) *State* v. *Clark*, 255 Conn. 268, 281, 764 A.2d 1251 (2001); accord *Terry* v. *Ohio*, supra, 27.

In addition to weapons, however, a police officer may lawfully seize "nonthreatening contraband that the officer feels during a lawful patdown search. . . . [I]nformation obtained through the sense of touch during a lawful patdown search may be used to establish such probable cause as is necessary to trigger an exception to the warrant requirement." *State* v. *Trine*, 236 Conn. 216, 234, 673 A.2d 1098 (1996).

had committed, or was committing, any crime.[14] The defendant concludes that the heroin and money seized during that search should have been suppressed. We disagree. We conclude that *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), and its progeny are inapplicable to this case because the search of the defendant's person was incident to a lawful arrest for which there was *probable cause*, independent of the search.

"Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Clark*, 255 Conn. 268, 279, 764 A.2d 1251 (2001); *State* v. *Edward B.*, 72 Conn. App. 282, 288, 806 A.2d 64, cert. denied, 262 Conn. 910, 810 A.2d 276 (2002). "Whether the trial court properly found that the facts submitted were enough to support a finding of probable cause is a question of law. . . . The trial court's determination on the issue, therefore, is subject to plenary review on appeal." (Citation omitted.) *State* v. *Clark*, supra, 279. "However, [w]e [will] give great deference to the findings of the trial court

---

[14] The defendant asserts that for a search to be a valid search incident to a lawful arrest, *the searching officer must know the basis for probable cause* before conducting the search. The defendant contends that because it was Canale, and not Wright, who saw the defendant toss an object to the floor that Canale believed contained heroin, it was Canale who might have had probable cause to search and to arrest the defendant. Furthermore, the defendant argues that because Canale did not communicate the basis for the probable cause to Wright, and because Wright's patdown search of the defendant did not create an independent basis for probable cause, Wright lacked authority to search inside the defendant's pockets.

because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Internal quotation marks omitted.) Id., 280; accord *State* v. *Nieves*, 65 Conn. App. 212, 216, 782 A.2d 203 (2001).

"Under both the federal and the state constitutions, a warrantless search and seizure is per se unreasonable, subject to a few well defined exceptions." *State* v. *Velasco*, 248 Conn. 183, 189, 728 A.2d 493 (1999). "The state bears the burden of proving that an exception to the warrant requirement applies when a warrantless search has been conducted." *State* v. *Clark*, supra, 255 Conn. 291.

"One recognized exception to the warrant requirement applies when a search is conducted incident to a lawful custodial arrest. . . . This exception permits a police officer to conduct a full search of an arrestee and to seize evidence as well as weapons." (Citations omitted.) *State* v. *Trine*, 236 Conn. 216, 235–36, 673 A.2d 1098 (1996). "Thus, if the defendant's arrest was lawful, the subsequent warrantless search of his person also was lawful." *State* v. *Velasco*, supra, 248 Conn. 189. "Even if a search and seizure *chronologically precede a formal arrest*, the search and seizure may be constitutionally valid as long as the arrest and the search and seizure are *substantially contemporaneous* and are *integral parts of the same incident*." (Emphasis added.) *State* v. *Trine*, supra, 236.

General Statutes § 54-1f (b)[15] authorizes a police officer to conduct a warrantless arrest of "any person who the officer has reasonable grounds to believe has com-

[15] General Statutes § 54-1f (b) provides: "Members of the Division of State Police within the Department of Public Safety or of any local police department or any chief inspector or inspector in the Division of Criminal Justice shall arrest, without previous complaint and warrant, any person who the officer has reasonable grounds to believe has committed or is committing a felony."

mitted or is committing a felony." "The phrase 'reasonable grounds to believe' is synonymous with probable cause." *State* v. *Velasco*, supra, 248 Conn. 189. "The determination of whether probable cause exists under the fourth amendment to the federal constitution, and under article first, § 7, of our state constitution, is made pursuant to a *totality of circumstances* test. . . . Probable cause exists when the facts and circumstances within the knowledge of the officer *and of which he has reasonably trustworthy information* are sufficient in themselves to warrant a man of reasonable caution to believe that a felony has been committed. . . . The probable cause test then is an objective one." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Clark*, supra, 255 Conn. 292.

Our Supreme Court has consistently held that "[t]he quantum of evidence necessary to establish probable cause exceeds mere suspicion, but is substantially less than that required for conviction. . . . The existence of probable cause does not turn on whether the defendant could have been convicted on the same available evidence. . . . [P]roof of probable cause requires less than proof by a preponderance of the evidence. . . . Probable cause, broadly defined, comprises such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred. . . . The probable cause determination is, simply, an analysis of probabilities. . . . The determination is not a technical one, but is informed by the factual and practical considerations of everyday life on which reasonable and prudent [persons], not legal technicians, act. . . . Probable cause is not readily, or even usefully, reduced to a neat set of legal rules. . . . Reasonable minds may disagree as to whether a particular [set of facts] establishes probable cause." (Citations omitted; internal quotation marks omitted.) Id., 292–93.

Moreover, in testing the amount of evidence that supports probable cause, it is not the personal knowledge of the arresting officer, but the *collective knowledge* of the law enforcement organization at the time of the arrest that must be considered. See *State* v. *Dennis*, 189 Conn. 429, 430–33, 456 A.2d 333 (1983); *State* v. *Runkles*, 174 Conn. 405, 410–11, 389 A.2d 730, cert. denied, 439 U.S. 859, 99 S. Ct. 177, 58 L. Ed. 2d 168 (1978); *State* v. *Hedge*, 59 Conn. App. 272, 274–75, 278–79, 756 A.2d 319 (2000); *State* v. *Holder*, 18 Conn. App. 184, 188, 557 A.2d 553 (1989).

In the present case, the Waterbury police department and, specifically, the members of the raid team executing the search and seizure warrant at the apartment on Elizabeth Street were aware, prior to the search and arrest of the defendant, that the purpose of the raid at the specified address was to search for and to seize narcotics, particularly heroin. Although Wright did not actually observe the defendant committing any crime involving narcotics or otherwise, Canale's uncontroverted testimony established that Canale had witnessed the defendant tossing to the floor an object containing what Canale believed to be heroin. At that moment, there was probable cause to justify the defendant's arrest. See General Statutes § 54-1f (b) (authorizing warrantless arrest by police of "any person who the officer has reasonable grounds to believe has committed or is committing a felony").

Accordingly, when Wright entered the bedroom behind Canale and Canale informed him that the defendant was under arrest, the facts and circumstances within Wright's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a person of reasonable caution to believe that a felony had been committed. See *State* v. *Clark*, supra, 255 Conn. 292. Thus, under the totality of the circumstances and on the basis of the collective knowledge of the raid

team, Wright had probable cause to arrest or to conduct a full search of the defendant to seize evidence as well as weapons. See id.; *State* v. *Trine*, supra, 236 Conn. 235–36; *State* v. *Dennis*, supra, 189 Conn. 432. It is not significant that the search and seizure by Wright preceded the defendant's formal arrest, which was effected by another officer,[16] because the events were substantially contemporaneous and integral parts of the same incident. See *State* v. *Trine*, supra, 236. The warrantless search of the defendant's person was, therefore, a valid search incident to a lawful arrest.

We conclude that the warrantless search of the defendant's person was lawful, as incident to a lawful arrest for which there was probable cause, independent of the search. Consequently, we conclude that the court's findings and conclusions in connection with its denial of the defendant's motion to suppress are legally and logically correct and supported by the facts set out in its oral decision. Accordingly, we affirm the judgment of conviction.

The judgment is affirmed.

In this opinion the other judges concurred.