# STATE OF CONNECTICUT *v.* THOMAS WALCZYK
## (AC 22055)

Lavery, C. J., Schaller and Peters, Js.

Argued February 11—officially released April 8, 2003

*Jon L. Schoenhorn*, with whom, on the brief, was *Matthew D. Dyer*, certified legal intern, for the appellant (plaintiff).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Mark W. Brodsky*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PETERS, J. This appeal concerns the validity of a search warrant that produced evidence of violations of General Statutes § 29-37i,[1] which penalizes the improper storage of firearms to which children might have access. The warrant was issued to obtain evidence of the crime of threatening under General Statutes (Rev. to 1999) § 53a-62,[2] but the defendant was acquitted of that

---

[1] General Statutes § 29-37i provides: "No person shall store or keep any loaded firearm on any premises under his control if he knows or reasonably should know that a minor is likely to gain access to the firearm without the permission of the parent or guardian of the minor unless such person (1) keeps the firearm in a securely locked box or other container or in a location which a reasonable person would believe to be secure or (2) carries the firearm on his person or within such close proximity thereto that he can readily retrieve and use it as if he carried it on his person. For the purposes of this section, 'minor' means any person under the age of sixteen years." Concededly, three minors lived in the defendant's residence.

[2] General Statutes (Rev. to 1999) § 53a-62 (a) provides: "A person is guilty of threatening when: (1) By physical threat, he intentionally places or attempts to place another person in fear of imminent serious physical injury, or (2) he threatens to commit any crime of violence with the intent to terrorize another, to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public

charge. A valid warrant would nonetheless have authorized the seizure of the defendant's firearms, which were in plain view when the police conducted their search. We must decide whether there was probable cause to issue the search warrant to obtain evidence of threatening. We conclude that there was not. We therefore reverse the judgment of the trial court convicting the defendant of two violations of § 29-37i and order repayment of the fines that the defendant was ordered to pay.

This case has a convoluted procedural history. As the result of a conversation between a police officer and the defendant, Thomas Walczyk, the state filed a ten count information against him. The state charged the defendant with risk of injury to a child under General Statutes (Rev. to 1999) § 53-21.[3] The trial court acquitted him of that charge. The state also charged him with threatening under § 53a-62. The jury acquitted him of that charge. Further, the state charged him with disorderly conduct under General Statutes (Rev. to 1999) § 53a-182 (a) (2)[4] and reckless endangerment under General Statutes § 53a-64.[5] Although the jury found him guilty of those charges, the state now concedes it produced insufficient evidence to support the

inconvenience, or (3) he threatens to commit such crime in reckless disregard of the risk of causing such terror or inconvenience."

[3] General Statutes (Rev. to 1999) § 53-21 provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony."

[4] General Statutes (Rev. to 1999) § 53a-182 (a) provides in relevant part: "A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . (2) by offensive or disorderly conduct, annoys or interferes with another person . . . ."

[5] General Statutes § 53a-64 (a) provides: "A person is guilty of reckless endangerment in the second degree when he recklessly engages in conduct which creates a risk of physical injury to another person."

conviction on those charges. The state asks us to affirm the conviction only on two charges of violating the improper firearm storage statute. Although the state charged the defendant with six violations, arising out of the defendant's possession of the six firearms listed in the search warrant, the court found him guilty of only two.[6] The court sentenced him to pay a fine of $100 for each of these charges, and the defendant appeals.

I

The first issue that we must address is whether this appeal has become moot because the defendant appears to have paid the fines arising out of his conviction under § 29-37i. There are no longer any other outstanding charges against him. Under General Statutes § 54-96a,[7] payment of fines before an Appellate Court hearing "shall vacate the appeal and restore the judgment [of the trial court]." We asked counsel to address whether this case has become moot because we can no longer afford the defendant any practical relief. "[A]n appeal is considered moot if there is no possible relief that the appeals court can grant to the appealing party, even if the court were to be persuaded that the appellant's arguments are correct." *Wallingford Center Associates* v. *Board of Tax Review*, 68 Conn. App. 803, 807, 793 A.2d 260 (2002); see also *Hilton* v. *New Haven*, 233 Conn. 701, 726, 661 A.2d 973 (1995). If a case has become moot, we lack subject matter jurisdiction to address its merits. See *Loisel* v. *Rowe*, 233 Conn. 370, 377–78, 660

---

[6] The record does not disclose the distinction upon which the court relied to hold the defendant guilty of the first two charges under General Statutes § 29-37i and not guilty of the remaining four. Each involved possession of a specifically identified firearm.

[7] General Statutes § 54-96a provides: "Any person appealing from the judgment of the Superior Court, adjudging him to pay a fine only, may pay the same at any time before the hearing in the Supreme Court or Appellate Court, without further cost, which payment shall vacate the appeal and restore the judgment."

A.2d 323 (1995); *Grimm* v. *Grimm,* 74 Conn. App. 406, 411, 812 A.2d 152 (2002).

At oral argument before this court, counsel for the defendant argued that the appeal is not moot because the defendant had paid the fines involuntarily. He represented that the defendant had been required to pay the fines as a special condition of his probation, which the court had imposed in conjunction with his trial court conviction of disorderly conduct and reckless endangerment. The state has not challenged the accuracy of the defendant's representation. We are persuaded that § 54-96a does not govern the involuntary payment of fines. On the present record, we agree with the defendant that his appeal is not moot. If he prevails in this appeal, he has a claim for monetary relief.[8]

## II

We turn now to the merits of the defendant's claim that he was wrongfully convicted of having violated § 29-37i. The parties agree that the resolution of this claim depends upon the validity of the search warrant that authorized the police to search two residences, his own and that of his father, in connection with the charge that he had committed the crime of threatening under § 53a-62. We agree with the defendant that the trial court improperly denied his motion to suppress the evidence obtained through the use of the search warrant.[9]

---

[8] In these circumstances, we need not address the question of whether a conviction under § 29-37i may have collateral consequences that would counsel against mootness. Such collateral consequences might, for example, arise in the context of applications for bail, employment, licenses or public housing. See, e.g., *State* v. *McElveen,* 261 Conn. 198, 205–208, 802 A.2d 74 (2002); *Housing Authority* v. *Lamothe,* 225 Conn. 757, 765, 627 A.2d 367 (1993); *State* v. *Smith,* 207 Conn. 152, 160, 540 A.2d 679 (1988); *Barlow* v. *Lopes,* 201 Conn. 103, 112–13, 513 A.2d 132 (1986).

[9] We agree with the state that this issue is not resolved by the fact that the defendant was acquitted of having committed the crime of threatening. A valid search warrant requires no more than a showing of probable cause, while a conviction requires a showing of guilt beyond a reasonable doubt.

The underlying facts are undisputed. The defendant and an adjoining landowner have long been at odds about the boundary line between their properties. Although the adjoining landowner had repeatedly initiated the defendant's arrest on issues raised by this dispute, the record does not indicate that the defendant has ever been convicted of any of those alleged crimes. Four months before the present incident, a police officer had advised the defendant that, if he believed that someone was trespassing on his property, he should not take the matter into his own hands, but instead should call the police to take care of the problem.

On August 30, 1999, the defendant observed that a locked gate on his property had been knocked down and that a logging skidder had been parked on property that he thought belonged to him. He called the police to report this alleged trespass. In response, Officer David Hebert of the Farmington police department came to the defendant's house. Hebert advised him to file a civil action to establish his property rights but indicated that he would take no further action until the defendant could produce authoritative evidence of ownership.[10] The defendant then told Hebert that "the police weren't taking the necessary action to avoid a bloodbath." Before he left, Hebert warned the defendant that he would be arrested if he interfered with the work that was being done by the adjoining landowner. During this conversation, the defendant was not armed and did not refer to firearms in any way. Hebert was annoyed and

See, e.g., *State* v. *Mordowanec*, 259 Conn. 94, 109–10, 788 A.2d 48 (search warrant), cert. denied, 536 U.S. 910, 122 S. Ct. 2369, 153 L. Ed. 2d 189 (2002); *State* v. *Lee*, 32 Conn. App. 84, 97–98, 628 A.2d 1318 (conviction), cert. denied, 227 Conn. 924, 632 A.2d 702 (1993), cert. denied, 510 U.S. 1202, 114 S. Ct. 1319, 127 L. Ed. 2d 668 (1994).

[10] The defendant had been unsuccessful in obtaining a judgment that he had record title to the disputed part of the property owned by the neighbor. As best we can tell, he was trying to pursue a claim of adverse possession.

offended by the defendant's "bloodbath" statement, but did not feel threatened thereby.

Upon returning to the police station, the officer informed his colleagues of what had transpired. This information was relayed to the abutting landowner. On September 4, 1999, the police obtained both an arrest warrant for the defendant and a search warrant for his residence and that of his father. Both warrants were executed on September 7, 1999.

Without informing the defendant of the arrest warrant, the police asked him to come to the police station to discuss the property dispute. He was then arrested and incarcerated. He was not told that the police were in the process of searching the family homes. Under arrest, the defendant had no opportunity to protest the execution of the search warrant.

Once the defendant had left his residence, a team of eight to ten police officers was dispatched to search the two residences. In addition to seizing the six firearms specifically identified in the search warrant, the officers saw and seized a large number of firearms, piles of ammunition and related paraphernalia. In the view of the police, several of the firearms were loaded. The officers knew that the defendant's firearms were registered and licensed to him because that information, contained in records at the police station, was the source of their identification of the weapons for which they would search.

At trial, the defendant properly challenged the validity of the search warrant by filing a pretrial motion to suppress the evidence so obtained for lack of probable cause to conduct the search. Without elaboration, the trial court denied the motion.[11]

---

[11] During the course of the trial and during the pendency of this appeal, the trial court denied the defendant's motion for permission to regain possession of any of the seized materials. The state does not dispute that some of the firearms were valuable antiques.

On appeal, the defendant again argues that the search warrant violated his rights under the fourth amendment to the United States constitution and the constitution of Connecticut, article first, § 7, because the warrant was issued without probable cause to do so. "Probable cause to search exists if: (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity; and (2) there is probable cause to believe that the items named will be found in the place to be searched." (Internal quotation marks omitted.) *State* v. *Mordowanec*, 259 Conn. 94, 110, 788 A.2d 48, cert. denied, 536 U.S. 910, 122 S. Ct. 2369, 153 L. Ed. 2d 189 (2002); *State* v. *Martinez*, 51 Conn. App. 59, 66, 719 A.2d 1213, cert. denied, 247 Conn. 952, 723 A.2d 324 (1998). The defendant maintains that the search warrant (1) failed to establish probable cause of criminal activity and (2) failed to describe the property to be searched with sufficient particularity.

"Whether the trial court properly found that the facts submitted were enough to support a finding of probable cause is a question of law. . . . The trial court's determination on [that] issue, therefore, is subject to plenary review on appeal." (Internal quotation marks omitted.) *State* v. *Pappas*, 256 Conn. 854, 864, 776 A.2d 1091 (2001); *State* v. *Arline*, 74 Conn. App. 693, 699, 813 A.2d 153, cert. denied, 263 Conn. 907, 819 A.2d 841 (2003). The facts to be considered are those contained within the four corners of the affidavit presented to the magistrate. *State* v. *Respass*, 256 Conn. 164, 172, 770 A.2d 471, cert. denied, 534 U.S. 1002, 122 S. Ct. 478, 151 L. Ed. 2d 392 (2001); *State* v. *Martinez*, supra, 51 Conn. App. 66; see also *State* v. *Couture*, 194 Conn. 530, 536, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985).

In undertaking our plenary review, we defer, if possible, to the reasonable inferences drawn by the magistrate from the affidavit before him. Nonetheless we have an independent responsibility to ascertain whether

a search warrant passes constitutional muster. Considering the facts alleged in the affidavit in this case, we conclude that this is one of the rare cases in which the magistrate acted improperly. It follows that the trial court improperly denied the defendant's motion to suppress the evidence obtained as a result of the execution of the search warrant.

The affidavit on which the magistrate relied in finding probable cause that a search would uncover evidence of threatening contained thirteen allegations of fact. The relevant paragraphs contain the following seven allegations:

"2. On 08-30-99, Officer Hebert of the Farmington Police Department responded to a trespassing complaint made by [the defendant]. . . . [The defendant has had a long-standing dispute about the boundary line of his own property and that of a specific neighbor.] [The defendant] told Officer Hebert that the Farmington Police were not taking the action needed to avoid a 'bloodbath.'

"Officer Hebert reported [the defendant's] complaint to . . . the owner of the land in question. As a result of [the defendant's] threat of a 'bloodbath,' [attorney] Robert Reeve, representing [that landowner], contacted [Captain] James Rio of the Farmington Police Department. [The attorney] expressed concerns for the safety of employees during imminent construction work planned for [the adjoining property]. He requested extra police protection during work periods.

"3. In the early spring of 1999, the Farmington Police Department received a letter from [the attorney for the adjoining landowner] along with a copy of a March 14, 1997 decision made by the State of Connecticut Superior Court regarding the issue of the land in question. The decision by Judge Christine E. Keller was in favor of [the adjoining landowner], and stated that [the defen-

dant] has no estate, interest in or encumbrance of said real property or any part thereof.

"4. During late winter of 1998 and early spring of 1999 [the defendant] came to the Farmington Police Department to speak with [Captain] Rio about the land dispute and the impending land development. He told [Captain] Rio at that time that he had a common law right to the property because he had been farming and maintaining it for some time. [The defendant] said that he was in the process of getting a Superior Court ruling to reverse the one made [in favor of the adjoining landowner]. He claimed that [a witness] had perjured himself and that the presiding Judge had acted inappropriately. [Captain] Rio explained that the Farmington Police had been advised of the ruling in favor of [the adjoining landowner] and that until we were officially notified otherwise, all parties and the police department would have to abide by the last court ruling. [The defendant] responded that, 'If you guys don't comply with what I'm telling you I'll take matters into my own hands.' [Captain] Rio advised the [the defendant] against any illegal actions to which [the defendant] responded that he would, '. . . do what [he] had to do to protect his property.'

"5. The Farmington Police Department has investigated [the defendant] on previous occasions for incidents involving threatening during which times he has either threatened the use of or displayed a gun.

"6. On 09-15-96 Officer Charette of the Farmington Police Department investigated a disturbance [on the defendant's street] involving [the defendant] and his brother. The argument was over property [on the defendant's street] for which [the defendant] was suing his parents. [The defendant's brother] claimed that the defendant had pushed him and threatened to shoot him. His brother felt no imminent threat but was concerned

because he knew that [the defendant] owned numerous guns. [The defendant] denied making the statement and no arrest was made.

"7. On 02-15-92, [the defendant] was arrested in Farmington for cruelty to animals and unlawful discharge of a firearm. Neighbors reported seeing him shoot a cat on his property with a handgun.

"8. On 12-08-90 neighbors complained that [the defendant] was shooting guns on property at the end of [the defendant's] street. He was shooting but was not in violation.

"9. On 07-30-90 [the defendant] was arrested by the Farmington Police for threatening. A motorist followed [the defendant] home to complain about the way he was driving. The defendant went inside and came back with a A-K assault rifle and an argument ensued. The assault rifle was taken as evidence. It was loaded with twenty rounds of ammunition.

"10. On 03-24-88 the Farmington Police Department responded to a disturbance [on the defendant's street]. The disturbance was over the same land dispute between [the defendant] and [his adjoining neighbor]. [Employees of the adjoining landowner] were working on the land. [The defendant] approached them carrying an AR 15 assault rifle ordering them to get off his property. One of the employees complained that [the defendant] had pointed the gun directly at him. [The defendant] was arrested for threatening, reckless endangerment, and interfering with police. He denied actually pointing the gun at anyone. The gun was seized as evidence. It contained one .223 round in the chamber and twenty-nine rounds in the magazine. [The defendant] fought with officers prior to being arrested.

\* \* \*

"12. That a review of Farmington Police records indicate that [the defendant] has maintained residences at

[two identified numbers on his street]. That town of Farmington property records show that [one of the residences] is owned by [the defendant's father] and the [other residence] is owned by [the defendant]."

In a one sentence memorandum of decision, the trial court denied the motion to suppress, stating that it had "reviewed the warrant and listened to the arguments." Taking into account the deference to be given to the decisions of fellow judges, the court noted that, if it had any doubt, it had resolved that doubt in favor of the issuing magistrate. It did not respond in any fashion to the defendant's argument about alleged shortcomings in the affidavit to provide probable cause for the crime of threatening. Without comment, it denied a subsequent motion for articulation.

We have before us the same record that was before the trial court. Our plenary review of the court's denial of the motion to suppress persuades us that the court should have granted the defendant's motion.

We start our analysis by noting what the affidavit does *not* say. It does not attempt to reconcile a construction of the "bloodbath" statement as a threat in the second subparagraph of paragraph two with the statement in the first subparagraph of what the defendant actually had said.[12] It does not state that any of the alleged earlier incidents of misconduct resulted in the defendant's *conviction* of threatening or of any other crime. It does not distinguish between recent incidents and those that have become stale by passage of time. It does not represent that the defendant's possession of firearms was illegal. It does not indicate which of the

---

[12] In light of Hebert's uncontested description of his encounter with the defendant, we wonder how the state can assert, in its brief, that the defendant had threatened to commence a bloodbath or engage in a crime of violence. Indeed, we have been unable to find a direct assertion to this effect in the affidavit, except in paragraph two, which reports a conversation between the police and the attorney for the landowner.

specifically described firearms would likely be found in the defendant's residence and which would likely be found in his father's residence. Indeed, it does not allege any criminal behavior at all on the part of the defendant's father.

What remains are slim pickings. We can discern only two assertions of fact that might establish probable cause to search the defendant's residence for firearms on August 30, 1999. Neither singly nor jointly do these facts suffice.

One assertion in the affidavit is that the defendant and his neighboring landowner were engaged in a property dispute. The neighbor felt concern for the safety of his employees on the basis of hearsay that the neighbor might have misunderstood. The voicing of this concern does not warrant an inference that the neighbor's apprehension was appropriate. A statement to a police officer that "there will be a bloodbath" if the *police* took no action does not give rise to probable cause to believe that the defendant intended to resolve the dispute by threatening his neighbor by the use of any of the firearms that were registered in the defendant's name.

A second assertion is that the defendant deplored the failure of the *police* to take action against the neighboring landowner. On an earlier occasion, the defendant had told Rio that, in the absence of police action, he would take matters into his own hands and do what he had to do to protect his property. He was advised not to do so and, indeed, in this case, he *followed instructions* to report any possible trespass to the police. Hebert came to the defendant's residence at the defendant's request. Hebert was not there in response to an incident in which the defendant had threatened the neighboring landowner, his employees or anyone else. A statement to a police officer that *the police* needed to act to avoid a "bloodbath" cannot be the

basis of probable cause to believe that the defendant, at that time or in the immediate future, would engage in threatening behavior.

We conclude, therefore, that the affidavit in this case was defective in at least two respects.[13] It did not establish probable cause that, on August 30, 1999, the defendant had committed the crime of threatening. Further, it did not establish that the firearms to be seized were connected with *any* criminal activity on that date. The magistrate improperly concluded that the affidavit showed probable cause to search the defendant's residence and the trial court improperly denied the defendant's motion to suppress the evidence seized in accordance with the warrant.

Concededly, apart from the firearms that were seized as a result of this defective search warrant, the state introduced no independent evidence that the defendant had improperly stored firearms in violation of § 29-37i. We conclude, therefore, that there was insufficient evidence to support the defendant's conviction on those charges.

The judgment is reversed and the case is remanded with direction to render judgment of not guilty of all of the charges filed against the defendant and to refund $200 to the defendant with interest, if applicable.

In this opinion the other judges concurred.

---

[13] We therefore need not address the defendant's contention that the warrant failed to establish that (1) the defendant kept firearms either at his home or that of his father or (2) that the items seized were either contraband or stolen goods.