## STATE OF CONNECTICUT *v.* GARY RYDER

Superior Court, Judicial District of Stamford-Norwalk
File No. CR-04-0149750-S

Memorandum filed January 2, 2009

*Robert J. Scheinblum*, senior assistant state's attorney, and *Dina Urso*, deputy assistant state's attorney, for the state.

*Gary Ryder*, pro se, the defendant.

DEVLIN, J. By plea of nolo contendere with a reservation to appeal, the defendant, Gary Ryder, was convicted of illegal possession of a reptile in violation of

General Statutes § 26-55 and sentenced to pay a $35 fine. The case stems from an August 15, 2004 incident in which the Greenwich police entered Ryder's home and discovered a crocodile in a bathtub. The defendant challenged the warrantless entry of his home by a motion to suppress that was denied by the court, *Tyma, J.* Ryder's nolo plea reserved the right to appeal from Judge Tyma's ruling.

In the direct appeal to the Appellate Court, the state asserted that because Ryder had paid the $35 fine, his appeal was moot and should be dismissed. *State* v. *Ryder*, 111 Conn. App. 271, 274, 958 A.2d 797 (2008). The Appellate Court remanded the matter so that an evidentiary hearing could be conducted and factual findings made as to (1) whether there is a reasonable possibility that the defendant has suffered or will suffer prejudicial collateral consequences as a result of his conviction and (2) whether payment of the fine was not done voluntarily. Id., 277–78.

Pursuant to the remand order, an evidentiary hearing was conducted on December 11 and 30, 2008. The following are the court's factual findings.

I

VOLUNTARINESS OF FINE PAYMENT

A

Facts

Attorney John Robert Gulash, Jr., represented Ryder and negotiated the plea agreement to which he ultimately agreed. At the time, attorney Gulash had been a lawyer for thirty years with a practice concentrated on criminal defense. He was familiar with criminal procedure in Connecticut courts.

During the plea negotiations, a number of options were discussed. One proposal from the state would

have required Ryder to "walk away" from an appeal of the suppression ruling. Ryder rejected that option. The final agreement required the state to drop the more serious charge of risk of injury to a child and permit Ryder to enter a plea of nolo contendere to the infraction of keeping a reptile without a license and reserving the right to appeal from the ruling on the motion to suppress.

On November 13, 2006, in accordance with the plea agreement, Ryder entered a conditional plea of nolo contendere to a violation of § 26-55, reserving his right to appeal. The state entered a nolle prosequi on the count charging Ryder with risk of injury to a child and recommended a fine. After canvassing Ryder, the court, *Devlin, J.*, (1) accepted the plea, (2) ruled that the suppression decision would be dispositive, (3) made a finding of guilty on the infraction and (4) imposed a $35 fine plus court costs. Thereafter, the court clerk provided Ryder with a notice of his right to appeal.

Immediately following the plea hearing, a clerk directed attorney Gulash to "go downstairs and pay the fine." Attorney Gulash and Ryder then proceeded to the clerk's office, and Ryder paid the imposed fine. Attorney Gulash did not know that payment of the fine could possibly act as a bar to an appeal. In addition, he did not consider requesting a stay of execution on payment of the fine or clarification from the court as to the clerk's directive. Ryder, whose principal concern was to appeal from the suppression ruling, paid the fine because he was told to do so.

The notice of rights form provided to Ryder states in part: "If only a fine was imposed and you wish to appeal, do not pay the fine or you will lose your right to appeal." Attorney Gulash was unaware of this language in the form and thought the form only concerned the time frames within which to appeal. Had attorney

Gulash been aware of that language, he would have taken steps to protect Ryder's appellate rights. Ryder signed the form without reading it and had no idea that payment of the fine would affect his intended appeal.

A few days after the plea hearing, attorney Gulash, believing that the appeal remained viable, drew a check on his client trust account and paid the entry fee for Ryder's appeal. Ryder, thereafter, filed a lengthy brief with the Appellate Court.

The receipt issued to Ryder upon payment of the fine on November 13, 2006, shows that fine was applied to the charge of risk of injury to a child and not to the reptile infraction. The same day, this misapplication of funds was corrected, and a new receipt was issued, correctly reflecting the fine payment on the infraction only.

The courtroom clerk on duty at the time of Ryder's change of plea was Amy Aurilio. Aurilio did not recall the proceeding.

This court finds that Ryder paid the fine at the direction of the clerk and that neither he nor his attorney had any idea that such payment could render an appeal moot. The court further finds that (1) Ryder had no intention to abandon his appeal and (2) the appeal from the suppression ruling was a bargained for term of the plea agreement to which the state agreed.

B

Discussion

Webster's Third New International Dictionary defines "involuntary" in part to mean "dictated by authority or circumstances: compulsory." The same dictionary defines "voluntary" in part to mean "acting of oneself: not constrained, impelled or influenced by another." In addition, our Appellate Court has ruled that a defendant

who paid his fine believing that it was a condition of probation did so involuntarily so as not to render his appeal moot. *State* v. *Walczyk*, 76 Conn. App. 169, 173, 818 A.2d 868 (2003).

In the present case, Ryder, who was represented by experienced counsel, paid the fine because he believed that the court required such payment on the basis of a directive from the clerk. This court finds such payment to have been involuntary for purposes of the application of General Statutes § 54-96a.[1]

## II

## COLLATERAL CONSEQUENCES

### A

### Facts

On November 23, 2004, Katherine Bella, a social work supervisor with the department of children and families (department), went to Ryder's home. She had an order of temporary custody that authorized the removal of Ryder's children. The children were taken into the department's custody. The department became involved in the case because of the discovery of the crocodile. The department believed that the animal posed a danger to Ryder's young children. In September, 2004, the department substantiated that Ryder had physically neglected his children and listed his name on its central abuse registry (central registry). Ryder administratively appealed his inclusion on the central

---

[1] General Statutes § 54-96a provides: "Any person appealing from the judgment of the Superior Court, adjudging him to pay a fine only, may pay the same at any time before the hearing in the Supreme Court or Appellate Court, without further cost, which payment shall vacate the appeal and restore the judgment." Our Supreme Court, construing General Statutes § 54-14, the predecessor to General Statutes § 54-96a, described it as an enumerated right of a defendant who has a pending appeal. *State* v. *Falzone*, 171 Conn. 417, 419, 370 A.2d 988 (1976). This construction seems contrary to the state's assertion that it may be a trap for an unwary defendant.

registry. This appeal has been deferred until the final outcome of his criminal proceeding.

Ryder's inclusion on the central registry has a negative impact on any future efforts he might make to adopt children or act as a foster parent. The department's regulations preclude persons on the central registry from adoption. Ryder adopted his children through the Family and Children's Agency (agency). Home studies done by the agency in 1997 and 2001 found Ryder qualified to be an adoptive parent. Mary Kate Schneider, director of adoption for the agency, stated that the agency consults with the department as to whether an applicant to adopt is disqualified. Persons with a criminal history are asked to provide a statement describing the circumstances of the incident. Thereafter, an evaluation of such information is made. Substantiation of neglect, however, is disqualifying, aside from any criminal conviction that might have resulted from the incident.

Kenneth Mysogland was the Stamford-Norwalk area director for the department. He was familiar with Ryder's case and became personally involved. His principal concern was that young children were in Ryder's home with a crocodile. Based on this, the department substantiated physical neglect in September, 2004, and placed Ryder's name on its central registry. Mysogland found Ryder to be uncooperative and further learned in November, 2004, that Ryder had a DVD containing supposed child pornography. In addition, Mysogland's staff obtained an order of temporary custody after Ryder informed Mysogland that he intended to remove the children from Connecticut. All of these events occurred prior to Ryder's arrest in the present case.

Further investigation revealed that on September 9, 2004, the crocodile was sent to a reptile farm in Florida and that the DVD did not contain child pornography.

Ryder's children, who had been taken by the department on November 23, 2004, were returned on December 7, 2004. The department closed its case in January, 2005.

As to Ryder's ability to adopt children in Connecticut, his placement on the central registry acts as a permanent bar. Ryder's placement on the central registry was due to the substantiation of physical neglect and not because of his infraction conviction.

## B

## Discussion

When there is no direct practical relief available from the reversal of a judgment, the collateral consequences doctrine acts as a surrogate, calling for a determination of whether a decision in the case can afford a litigant some practical relief in the future. *Rowe* v. *Superior Court*, 289 Conn. 649, 655, 960 A.2d 256 (2008). An appellate court may retain jurisdiction when a litigant shows that there is a reasonable possibility that prejudicial collateral consequences will occur. *State* v. *Preston*, 286 Conn. 367, 382, 944 A.2d 276. The litigant must establish these consequences by more than mere conjecture but need not demonstrate that these consequences are more probable than not. Id.

Ryder asserts two prejudicial collateral consequences that could reasonably flow from his infraction conviction. First, that the conviction would negatively affect his future efforts to adopt children. Second, that the conviction could result in an increased penalty if he is convicted of a crime in the future.

As to future adoption, if Ryder were otherwise eligible, the adoption agency would view his conviction as one factor in a suitability analysis. Under those facts, even the infraction conviction could possibly have prejudicial consequences. Ryder, however, is not eligible

to adopt because the department made a neglect finding against him. The infraction conviction is immaterial to that finding because, as discussed previously, it was based on the department's factual investigation. It is true that the neglect finding is presently under appeal and could be vacated, but reversal of the infraction conviction would not affect that. The point is that Ryder is now barred from adopting children for reasons unrelated to the infraction conviction. This court therefore does not find any prejudicial consequences to future adoption because of the infraction conviction.

As to possible heavier penalties for future criminal convictions, this court finds that the infraction conviction could have collateral consequences. In the ordinary case, it probably would not. If, however, the future case involved children or animals, there exists at least a reasonable possibility that the infraction conviction could result in a heavier sentence. See *Rowe* v. *Superior Court*, supra, 289 Conn. 656 (service of contempt sentence did not render appeal moot because, inter alia, conviction could impact sentence imposed for future crimes).

This court finds that it is reasonably possible that prejudicial collateral consequences would occur as a result of Ryder's infraction conviction.

III

CONCLUSION

On the basis of the factual findings set forth previously, this court finds that Ryder's fine payment was involuntary and that there is a reasonable possibility that prejudicial collateral consequences would occur as a result of his infraction conviction.