## STATE OF CONNECTICUT *v.* LUIS ARPI
## (AC 22448)

Mihalakos, Flynn and Bishop, Js.

Argued October 30, 2002—officially released April 1, 2003

*Vicki H. Hutchinson*, for the appellant (defendant).

*Melissa L. Streeto*, special deputy assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan*, state's attorney, and *Robert C. Brunetti*, senior assistant state's attorney, for the appellee (state).

MIHALAKOS, J. The defendant, Luis Arpi, appeals from the denial of his motion to open the judgment and to withdraw his plea of guilty to the charge of possession of a controlled substance in violation of General Statutes § 21a-279 (c). On appeal, the defendant claims that the court improperly (1) found that General Statutes § 54-95b prohibits opening criminal judgments more than four months after the date of judgment, (2) denied his motion to open the judgment and to withdraw his guilty plea in violation of Practice Book §§ 39-26 and 39-27, and (3) deprived him of his constitutional rights because his plea was not in accordance with Practice Book § 39-19. We dismiss the appeal for lack of subject matter jurisdiction.

The following facts and procedural history are relevant to our disposition of the defendant's appeal. The defendant was charged with possession of a controlled substance in violation of § 21a-279 (c),[1] failure to have headlamps on his vehicle in violation of General Statutes § 14-96b and improper parking in violation of General Statutes § 14-251.[2] On October 29, 1999, the defendant pleaded guilty to the charge of possession of a controlled substance. At the time of the plea, an attorney did not represent the defendant; however, the defendant was provided with a Spanish interpreter. Prior to accepting the defendant's plea, the court,

---

[1] General Statutes § 21a-279 (c) provides in relevant part: "Any person who possesses or has under his control any quantity of any controlled substance other than a narcotic substance, or a hallucinogenic substance other than marijuana or who possesses or has under his control less than four ounces of a cannabis-type substance, except as authorized in this chapter, for a first offense, may be fined not more than one thousand dollars or be imprisoned not more than one year, or be both fined and imprisoned . . . ." The defendant was charged with possession of less than four ounces of marijuana.

[2] The prosecutor nolled the charges of failure to have headlamps on the defendant's vehicle and improper parking.

*Resha, J.*, canvassed the defendant pursuant to Practice Book §§ 39-19 through 39-21, to make sure the defendant understood his rights and the risk that he may be deported pursuant to General Statutes § 54-1j because he was not a United States citizen. The defendant acknowledged that he was pleading guilty of his own volition and that no one had forced him to do so. The court accepted the defendant's guilty plea and imposed a $100 fine plus costs. The defendant paid the fine that same day.

On September 28, 2001, almost two years after the defendant pleaded guilty and paid the fine, attorney Vicki H. Hutchinson, on behalf of the defendant, filed a motion to open the judgment and to withdraw the defendant's plea. The defendant claimed that the court's plea canvass did not comply with Practice Book § 39-19 and that he was not advised that he might be eligible for a pretrial diversion program that would result in a dismissal of the narcotics charge. On October 17, 2001, the court, *Ginocchio, J.*, heard argument on the motion to open the judgment and to withdraw the guilty plea. On October 24, 2001, the court denied the defendant's motion. This appeal followed.

Although the parties did not raise the issue of mootness in this appeal, we do so sua sponte because mootness implicates the court's subject matter jurisdiction and is, therefore, a threshold matter to resolve.[3] *Ayala* v. *Smith*, 236 Conn. 89, 93, 671 A.2d 345 (1996); *State* v. *Klinger*, 50 Conn. App. 216, 221, 718 A.2d 446 (1998). "The doctrine of mootness is rooted in the same policy interests as the doctrine of standing, namely, to assure the vigorous presentation of arguments concerning the matter at issue. . . . [The Supreme Court] recently reiterated that the standing doctrine is designed to ensure

---

[3] This court asked the parties to be prepared to address the issue of mootness at oral argument.

that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant." (Citations omitted; internal quotation marks omitted.) *State* v. *McElveen*, 261 Conn. 198, 204, 802 A.2d 74 (2002). If an actual controversy does not exist, then the case has become moot. Id., 205; see also *Williams* v. *Ragaglia*, 261 Conn. 219, 225, 802 A.2d 778 (2002).

In *State* v. *Henkel*, 23 Conn. Sup. 135, 136, 177 A.2d 684 (1961), the defendant was found guilty of operating a motor vehicle while under the influence of alcohol. The trial court imposed a fine, which was paid by the defendant on the same day. Id. Subsequently, the defendant appealed from the court's judgment. Id. The issue that confronted the Appellate Division of the Circuit Court in *Henkel* was whether a defendant who had been found guilty by the court and voluntarily had paid the fine imposed by the court could have his conviction reviewed by an appellate court. Id.

The *Henkel* court held that "the payment of a fine precludes review and . . . terminates the case." Id., 139. The court acknowledged, relying on other courts' decisions, that it was "precluded from passing upon the substantive question which [the] defendant attempt[ed] to raise. When [the] defendant paid the fine in full which had been imposed, there was a complete compliance with the sentence of the court; the questions became moot; the matter was at an end, and no

right of appeal existed thereafter from the satisfied judgment and sentence." (Internal quotation marks omitted.) Id. Furthermore, the court recognized that "[t]he fine having been paid, the court could not reopen the judgment . . . since it was satisfied. . . . It is clear that where an act has been done in execution of a sentence, the court is without power to erase the judgment." (Internal quotation marks omitted.) Id., 138.

The court, furthermore, relied on General Statutes (1959 Sup.) § 54-13, now General Statutes § 54-96a, which provides: "Any person appealing from the judgment of the Superior Court, adjudging him to pay a fine only, may pay the same at any time before the hearing in the Supreme Court or Appellate Court, without further cost, which payment shall vacate the appeal and restore the judgment." General Statutes § 54-96a; see *State* v. *Henkel*, supra, 23 Conn. Sup. 138–39. The court, therefore, dismissed the appeal as moot. *State* v. *Henkel*, supra, 139.

In this case, the defendant was charged with a criminal offense, a misdemeanor, and paid the fine imposed. In accordance with *Henkel* and § 54-96a, the voluntary payment of the fine operates to vacate the appeal and, thus, precludes the trial court from opening the judgment and allowing the defendant to withdraw his guilty plea. Consequently, the defendant's payment of the fine in this criminal matter has rendered his appeal moot. See *State* v. *Jenkins*, 35 Conn. Sup. 516, 517–18, 394 A.2d 204 (1977) (defendant found guilty of carrying pistol without permit in violation of General Statutes § 29-35; by paying fine, defendant voluntarily terminated action and court lacked power to open judgment, vacate plea).

Our Supreme Court has determined, however, that "a controversy continues to exist, affording the court jurisdiction, if the actual injury suffered by the litigant

potentially gives rise to a collateral injury from which the court can grant relief. . . . [A] common theme emerges upon review of [our case law]: whether the litigant demonstrated a basis upon which we could conclude that, under the circumstances, prejudicial collateral consequences are *reasonably possible* as a result of the alleged impropriety challenged on the appeal." (Emphasis added.) *State* v. *McElveen,* supra, 261 Conn. 205; see also *Williams* v. *Ragaglia,* supra, 261 Conn. 226.

"[The] standard [to be applied] requires that, for a litigant to invoke successfully the collateral consequences doctrine, the litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur. Accordingly, the litigant must *establish* these consequences *by more than mere conjecture,* but need not demonstrate that these consequences are more probable than not. This standard provides the necessary limitations on justiciability underlying the mootness doctrine itself. . . . The reviewing court therefore determines, based upon the particular situation, whether, the prejudicial collateral consequences are reasonably possible." (Emphasis added.) *State* v. *McElveen,* supra, 261 Conn. 208. In other words, "this standard requires the [defendant] to demonstrate more than an abstract, purely speculative injury, but does not require the [defendant] to prove that it is more probable than not that the prejudicial consequences will occur." *Williams* v. *Ragaglia,* supra, 261 Conn. 227.

The defendant argued at oral argument that his appeal is not moot because collateral consequences exist, specifically his deportation, and our court may, therefore, retain jurisdiction based on *McElveen* and *Williams.*[4]

---

[4] We note that in *Barlow* v. *Lopes,* 201 Conn. 103, 104, 513 A.2d 132 (1986), the petitioner appealed from the denial of his habeas corpus petition, alleging that he did not knowingly, intelligently and voluntarily waive his right to appeal when he agreed to plead guilty. Our Supreme Court stated: "[C]ollat-

In both *McElveen* and *Williams*, the parties asserting the collateral consequences actually explained to the court the consequences that were "reasonably possible." *Williams* v. *Ragaglia*, supra, 261 Conn. 227–34; *State* v. *McElveen*, supra, 261 Conn. 213–16. The defendant in this case never brought up that argument on appeal and did not discuss the collateral consequence of deportation in his brief to this court. The defendant has never argued that it is "reasonably possible" that any collateral consequence exists.[5]

eral legal disabilities are imposed as a matter of law because of a criminal conviction . . . ." Id., 112. It becomes clear, on a further reading of *Barlow*, that this notion is limited to cases involving sentences of incarceration. Id. The court stated: "[A] case will not be declared moot even where the sentence has been fully served." Id. The court continued by explaining that the trial court misinformed the petitioner as to the desirability of an appeal and, thus, inadequately canvassed him on the waiver of his appellate rights and the subsequent consequences of such an action. Id., 113. Our case, however, is distinguishable. Unlike the petitioner in *Barlow*, the defendant in this case was sentenced only to pay a fine. The presumed collateral consequences of a prison sentence would, therefore, not affect the defendant. *Barlow*, moreover, concerned the waiver of the petitioner's right to appeal in which the trial court acknowledged that the petitioner had not been advised on the possible merits of an appeal. Id., 110. Here, however, the defendant knowingly, intelligently and voluntarily waived his right to trial and was canvassed as to the collateral consequence of deportation. In this case, we find it hard to justify opening the judgment because of a consequence of which the defendant was advised when he decided to plead guilty.

Moreover, although this court has recognized deportation as a collateral consequence, case law suggests that once the defendant is informed of the possibility of deportation pursuant to General Statutes § 54-1j, the onus rests with the defendant and his counsel to inform the court if a collateral consequence arises before or after the plea is accepted. See *State* v. *Irala*, 68 Conn. App. 499, 520, 792 A.2d 109, cert. denied, 260 Conn. 923, 797 A.2d 519, cert. denied, 537 U.S. 887, 123 S. Ct. 132, 154 L. Ed. 2d 148 (2002); see also *State* v. *Cooper*, 64 Conn. App. 121, 124, 779 A.2d 789 (2001).

[5] The defendant's attorney has only once provided, at best, a vague conjecture concerning "serious consequences" that will impact the defendant, and her speculations were raised during the defendant's hearing on his motion to open the judgment and to withdraw his guilty plea. Counsel stated to the trial court in relevant part:

"And the reason it has become such an issue now is an *immigration problem*. This is a drug conviction, possession of marijuana, although Judge Resha advised him that conviction of such an offense could result in deporta-

This court is not asserting that deportation is not a collateral consequence that would prevail over a claim of mootness. This court, however, was never presented with any evidence or information that there was a "reasonable possibility" that the defendant was or would be facing deportation. This court cannot find a collateral consequence when none has been presented in the pleadings, record, transcript or briefs.[6] See *State* v. *Evans*, 9 Conn. App. 349, 354, 519 A.2d 73 (1986) ("this court cannot resort to matters extraneous to the formal record, to facts which have not been found and which are not admitted in the pleadings, or . . . are not part of the record").

The defendant cannot satisfy the standard set forth in both *McElveen* and *Williams* to overcome the mootness that is the effect of § 54-96a and *Henkel*. We must, therefore, dismiss the appeal for lack of subject matter jurisdiction.

The appeal is dismissed.

In this opinion the other judges concurred.

---

tion or denial of naturalization. He was never advised that he had options. . . .

"Your Honor, it's a drug conviction. It has *serious consequences* for this defendant. Even though it's just a payment of a fine and he doesn't have more jail time hanging over him, it does have *serious consequences* for him. He should have been advised by the court the options—not the options, but the rights to which he was entitled." (Emphasis added.)

[6] Although the state in its brief discusses the defendant's purported immigration and deportation consequences, the state only does so as a means of speculating as to why he brought such a motion at this late of a date.