# STATE OF CONNECTICUT *v.* BRIAN R. EASTMAN, JR.
# STATE OF CONNECTICUT *v.* JOHN N. SCASINO
# STATE OF CONNECTICUT *v.* SERGIO URZUA
## (AC 25821)

Flynn, DiPentima and Harper, Js.

Argued September 16—officially released November 8, 2005

*Ralph D. Sherman,* for the appellants (defendants).

*Sarah Hanna,* special deputy assistant state's attorney, with whom, on the brief, were *Mary M. Galvin,* state's attorney, and *Marjorie Sozanski,* deputy assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendants in this consolidated appeal, Brian R. Eastman, Jr., John N. Scasino and Sergio Urzua, appeal from the judgments of the trial court rendered following the denial of their motions to dismiss for insufficiency of cause. On appeal, the defendants claim that the court improperly found that a town ordinance requiring persons to obtain a permit from the town chief of police to discharge a firearm within the limits of the municipality did not intrude on the state's right to regulate hunting. We dismiss the appeal as moot.

The following facts and procedural history are relevant to our disposition of the defendants' appeal. On December 23, 2003, the defendants were hunting geese at the Grassy Hill Country Club in Orange. At the time, each of the defendants possessed a valid hunting license from the department of environmental protection. The defendants also had obtained permission from the custodian of the grounds prior to hunting on the property.

While the defendants were hunting, an individual driving by the golf course heard gunshots. The driver thought that his vehicle may have been hit by a stray shotgun pellet. He stopped to speak with the defendants and then called the Orange police department. The police subsequently issued each of the defendants a misdemeanor summons and complaint charging them

with having violated a town ordinance. Although the defendants possessed valid hunting licenses and had permission from the golf course to be hunting on those grounds, they did not have permits from the Orange chief of police to discharge a firearm on that particular property, as required by Orange Code of Ordinances § 211-1.[1]

The defendants each filed a motion to dismiss for insufficiency of cause, claiming that Connecticut municipalities lack the authority to regulate hunting by individuals who possess valid hunting licenses issued by the state. The court denied the defendants' motions, holding that the ordinance at issue did not conflict with the state statutes that regulate hunting because the ordinance sought only to protect the public peace and safety rather than specifically to regulate hunting. The defendants then entered conditional pleas of nolo contendere, reserving the right to appeal from the court's denial of their motions to dismiss. The court imposed a $50 fine, without costs, on each defendant. The defendants paid their respective fines and this appeal followed.

The parties did not raise the issue of mootness in the present appeal, but we do so sua sponte because mootness implicates the court's subject matter jurisdiction. It is, therefore, a threshold matter to resolve. *State v. Aquino*, 89 Conn. App. 395, 399, 873 A.2d 1075, cert. granted on other grounds, 275 Conn. 904, 882 A.2d 676 (2005). "The doctrine of mootness is rooted in the same policy interests as the doctrine of standing, namely, to assure the vigorous presentation of arguments concerning the matter at issue. . . . [Our Supreme Court has] reiterated that the standing doctrine is designed to

---

[1] Orange Code of Ordinances § 211-1 provides: "Except as otherwise specifically permitted by law, no person shall discharge a firearm within the Orange town limits without first having obtained a permit from the Orange Chief of Police to do so."

ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant." (Citations omitted; internal quotation marks omitted.) *State* v. *McElveen*, 261 Conn. 198, 204, 802 A.2d 74 (2002). If an actual controversy does not exist between the parties, both when the appeal is filed and through the pendency of the appeal, then the case has become moot. Id., 205; *Williams* v. *Ragaglia*, 261 Conn. 219, 225, 802 A.2d 778 (2002).

Under General Statutes § 54-96a, the payment of a fine before a hearing in the Appellate Court "shall vacate the appeal and restore the judgment." When a defendant voluntarily pays in full a fine that has been imposed, there is "complete compliance with the sentence of the court; the [substantive] questions [become] moot; the matter [is] at an end, and no right of appeal exist[s] thereafter from the satisfied judgment and sentence. . . . [T]he fine having been paid, the court [cannot] reopen the judgment . . . since it [is] satisfied. . . . It is clear that where an act has been done in execution of a sentence, the court is without power to erase the judgment." (Citation omitted; internal quotation marks omitted.) *State* v. *Arpi*, 75 Conn. App. 749, 752–53, 818 A.2d 48 (2003).

In this case, the defendants were charged with violating a town ordinance. After the court denied their motions to dismiss for insufficiency of cause, the defendants entered conditional pleas of nolo contendere,

reserving the right to appeal from the court's denial of their *motions to dismiss. The court* then fined each of the defendants $50, without costs. During the pendency of their appeal, the defendants voluntarily paid the fines that the court imposed. Consequently, the judgments against the defendants have been satisfied, and the substantive issues that they have raised on appeal are moot.

Notwithstanding the mootness of the defendants' appeal, "a controversy continues to exist, affording the court jurisdiction, if the actual injury suffered by the litigant potentially gives rise to a collateral injury from which the court can grant relief." *State* v. *McElveen,* supra, 261 Conn. 205. Such a situation arises when a litigant demonstrates "a basis upon which [the court] could conclude that, under the circumstances, prejudicial collateral consequences are *reasonably possible* as a result of the alleged impropriety challenged on the appeal." (Emphasis added.) Id. "[This] standard requires that, for a litigant to invoke successfully the collateral consequences doctrine, the litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur. Accordingly, the litigant must establish these consequences by more than mere conjecture, but need not demonstrate that these consequences are more probable than not. This standard provides the necessary limitations on justiciability underlying the mootness doctrine itself. Where there is no direct practical relief available from the reversal of the judgment . . . the collateral consequences doctrine acts as a surrogate, calling for a determination whether a decision in the case can afford the litigant some practical relief in the future. The reviewing court therefore determines, based upon the particular situation, whether, the prejudicial collateral consequences are reasonably possible." Id., 208. In other words, the litigant must "demonstrate more than an abstract, purely speculative injury, but [this standard]

does not require the [litigant] to prove that it is more probable than not that the prejudicial consequences will occur." *Williams* v. *Ragaglia*, supra, 261 Conn. 227.

The defendants argue that their appeal is not moot because collateral consequences exist as a result of their convictions, in particular that their ability to hunt will be impaired because of the stigma associated with a hunting or firearms violation. The defendants claim that they will not be able to obtain, or to retain, a gun permit because they will have to answer affirmatively questions regarding arrests and convictions.[2] The defendants further note that gun permit applicants are required to submit to state and national criminal records checks pursuant to General Statutes § 29-29 (a), and they argue that their convictions will prevent them from securing permits. Finally, the defendants argue that they may be prevented from hunting on private property or from joining a hunting club if either the private property owner or hunting club asks whether they have ever been convicted of a hunting violation and they reveal that these convictions have occurred.[3] We disagree with the defendants that these consequences will result from their convictions.

Contrary to the defendants' claims, they were not convicted of either a crime or a hunting violation. Rather, they were convicted of violating a town ordi-

---

[2] The defendants specifically refer to the Connecticut pistol permit application, which includes the following questions: "Have you ever been ARRESTED for any crime, in any jurisdiction, regardless of disposition? . . . Have you ever been CONVICTED in any court of any crime?"

[3] The defendants also claim that without a decision on the merits of this case, they will not know whether they are able to hunt in Orange without a permit from the Orange chief of police. Although the defendants may be subject to prosecution for this violation again if we dismiss their appeal for lack of subject matter jurisdiction, that possibility is not a collateral consequence of the convictions from which they are presently appealing, but rather, is an entirely distinct controversy. This appeal, therefore, still would be moot.

nance that required individuals to obtain a permit from the town chief of police before discharging a firearm, an offense under General Statutes § 7-148. Such an offense is merely a *violation* as, "[a]n offense, for which the only sentence authorized is a fine, is a violation unless expressly designated an infraction." General Statutes § 53a-27 (a). Because the penalty for violating Orange Code of Ordinances § 211-1 is at most only a $100 fine, the defendants' offenses constitute violations, and not infractions, under § 53a-27 (a).[4] Most importantly, "[t]he term 'crime' comprises felonies and misdemeanors. Every offense which is not a 'crime' is a 'violation'. Conviction of a violation shall not give rise to any disability or legal disadvantage based on conviction of a criminal offense." General Statutes § 53a-24 (a). Thus, the defendants' concerns that their convictions will impact negatively on their ability to hunt in the future are unwarranted.

The comment of the commission to revise our criminal statutes makes this even more clear: " 'Violation' . . . is a new category of non-criminal offense; conduct which should be proscribed but conviction for which should in no way brand the offender a 'criminal'. . . . [F]or example, a person who has been convicted only of a violation can truthfully answer '*no*' to the question: Have you ever been convicted of a crime?" (Emphasis added.) Commission to Revise the Criminal Statutes, Penal Code Comments, Connecticut General Statutes Annotated (West 2001) § 53a-24, commission comment. Accordingly, the defendants will not have to answer affirmatively questions posed on a gun permit application by a private property owner or by a hunting club relating to past arrests or convictions on the basis of

---

[4] Pursuant to Orange Code of Ordinances § 211-5, "[a]ny person who violates any provision of [chapter 211] shall be subject to arrest and prosecution by the proper authorities and may be *fined* an amount not to exceed $100 for each violation." (Emphasis added.)

the violation at issue. In addition, because the defendants were convicted only of violations and not of crimes, they will not have criminal histories resulting from their convictions.[5] We conclude that the defendants are unable to demonstrate a reasonable possibility of collateral consequences so as to overcome the mootness of their appeal. We must, therefore, dismiss the defendants' appeal for lack of subject matter jurisdiction.

The appeal is dismissed.

In this opinion the other judges concurred.

---

[5] In fact, the state represented in its supplemental brief that the convictions at issue are not contained in the criminal history records for the defendants.