MICHAEL IACURCI *v.* SCOTT WELLS ET AL.
(AC 28434)

DiPentima, McLachlan and Gruendel, Js.

Argued February 20—officially released June 10, 2008

*Christopher R. Perry*, for the appellants (defendants).

*Michael Iacurci*, pro se, the appellee (plaintiff).

*Opinion*

GRUENDEL, J. This case arises out of a landlord-tenant dispute. The defendants, Scott Wells and Dottie Wells, appeal from the judgment of possession rendered by the trial court in favor of the plaintiff, Michael Iacurci. The defendants claim on appeal that the court (1) lacked jurisdiction to hear the case, (2) improperly found that the lease was valid and (3) improperly found that the certificate of occupancy was valid. We dismiss the appeal as moot.

On October 24, 2005, the defendants entered into a lease with Spencer Classic Homes, LLC, for a property located at 4 Benjamin Lane in East Haddam (leased property). The plaintiff subsequently purchased the property from Spencer Classic Homes, LLC, on February 28, 2006, subject to the defendants' lease. The lease provided: "Beginning on the [c]ommencement [d]ate and continuing thereafter to the end of the term of this lease, [t]enant shall pay rent to [l]andlord in the amount of [z]ero [d]ollars ($0.00) per month . . . ." The lease further provided: "In the event that the [t]enant does not vacate the premises upon the date that the [c]ertificate of [o]ccupancy is issued for # 9 Benjamin Lane, East Haddam, Connecticut, then [t]enant shall pay rent to the [l]andlord in the amount of [t]hree [t]housand [f]ive [h]undred [d]ollars ($3,500.00) per month . . . without demand counterclaim abatement, deduction [or] setoff." Scott Wells testified that he and Dottie Wells had entered into a contract with New House Resource Group, LLC, to purchase 9 Benjamin Lane.[1]

---

[1] We note that the court was never presented with the purchase and sale contract for 9 Benjamin Lane and heard only oral testimony about the existence of the contract and its purported relationship with the lease.

The certificate of occupancy for 9 Benjamin Lane was issued on March 2, 2006, and the defendants became aware of it sometime in the middle of March. After so learning, the defendants continued to occupy the leased property, and they made no rental payments to the plaintiff. On May 26, 2006, the plaintiff commenced a summary process action against the defendants for nonpayment of rent. On July 14, 2006, the plaintiff filed a motion for use and occupancy payments, which was granted by the court. After a trial to the court, the court found that the defendants had failed to make rental payments, in accordance with the lease, after the certificate of occupancy had issued for 9 Benjamin Lane. The court, therefore, rendered judgment of possession in favor of the plaintiff. This appeal followed. While this appeal was pending, on April 18, 2007, the defendants relinquished possession of the leased property, returning possession to the plaintiff.

Before we can reach the merits of the defendants' appeal, we first must determine whether the case has been rendered moot because the defendants are no longer in possession of the leased property.[2] "Mootness is a threshold issue that implicates subject matter jurisdiction, which imposes a duty on the court to dismiss a case if the court can no longer grant practical relief to the parties. . . . Mootness presents a circumstance wherein the issue before the court has been resolved or had lost its significance because of a change in the condition of affairs between the parties. . . . [T]he existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the

---

[2] In his brief, the plaintiff contends that this appeal is moot. The defendants counter that even though they no longer retain possession of the leased property, this court still should review the merits of their appeal because the matter creates collateral consequences prejudicial to their interests.

determination of which no practical relief can follow." (Internal quotation marks omitted.) *Wilcox* v. *Ferraina*, 100 Conn. App. 541, 547–48, 920 A.2d 316 (2007). "We have consistently held that an appeal from a summary process judgment becomes moot where, at the time of the appeal, the defendant is no longer in possession of the premises." (Internal quotation marks omitted.) *Cheshire* v. *Lewis*, 75 Conn. App. 892, 893, 817 A.2d 1277, cert. denied, 264 Conn. 905, 826 A.2d 177 (2003). "Our Supreme Court, however, has allowed us to retain jurisdiction where the matter being appealed creates collateral consequences prejudicial to the interests of the appellant, even though developments during the pendency of the appeal would otherwise render it moot." (Internal quotation marks omitted.) *Wilcox* v. *Ferraina*, supra, 548.

"[T]o invoke successfully the collateral consequences doctrine, the litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur. Accordingly, the litigant must establish these consequences by more than mere conjecture, but need not demonstrate that these consequences are more probable than not. This standard provides the necessary limitations on justiciability underlying the mootness doctrine itself. Whe[n] there is no direct practical relief available from the reversal of the judgment . . . the collateral consequences doctrine acts as a surrogate, calling for a determination whether a decision in the case can afford the litigant some practical relief in the future." (Internal quotation marks omitted.) *Smith-Lawler* v. *Lawler*, 97 Conn. App. 376, 380, 904 A.2d 1235 (2006).

The defendants raise three possible adverse collateral consequences that they claim require review of their otherwise moot appeal. First, the defendants point out that they have initiated a separate action that they claim will challenge many of the issues litigated before the

court in the summary process action. They claim that in rendering its judgment of possession of the leased property in favor of the plaintiff, the court necessarily made certain findings and that the defendants will be collaterally estopped from litigating these issues in the separate, pending action. In addition, the defendants claim that there will be prejudicial consequences to their reputation in the community and to Scott Wells' maintenance of his gaming license for employment. We consider each claimed collateral consequence.

I

## COLLATERAL ESTOPPEL

The defendants have initiated a separate action involving issues that pertain to both the leased property as well as the property they allegedly contracted to purchase at 9 Benjamin Lane. The plaintiff, along with New House Resource Group, LLC, and Spencer Classic Homes, LLC, are defendants in that pending action. In that action, the defendants in this case are seeking to have their security deposit returned and are claiming violations of certain home improvement contractor statutes, as well as violations of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. See Wells v. New House Resource Group, LLC, Superior Court, judicial district of Middlesex, Docket No. CV-06-5000789-S. Additionally, the defendants claim that the amount of rent, if any, due to the plaintiff will also be an issue in the pending action. The defendants argue that in rendering judgment of possession in favor of the plaintiff, the court necessarily had to find that (1) a valid and enforceable lease was entered into by the parties, (2) the relationship between the lease and the purchase and sale contract for 9 Benjamin Lane had no effect on the lease, and (3) a valid and enforceable certificate of occupancy was issued for 9 Benjamin

Lane. The defendants claim that these issues were presented to, and decided by, the court and are key issues that will be litigated in the pending action. Further, they claim that if this appeal is deemed moot, they will be bound by what they believe are incorrect determinations made by the court. The plaintiff agrees that the issues were presented to the court but argues that the court determined only the question of who should be in possession of the property without necessarily determining the validity of the lease or the certificate of occupancy and what relationship, if any, existed between the lease and the alleged purchase and sale contract for 9 Benjamin Lane.[3]

"Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment." (Internal quotation marks omitted.) *Alexandru* v. *Strong*, 81 Conn. App. 68, 76, 837 A.2d 875, cert. denied, 268 Conn. 906, 845 A.2d 406 (2004). "An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . 1 Restatement (Second), Judgments § 27, comment (d) (1982). An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered." (Internal quotation marks omitted.) *Powell* v. *Infinity Ins. Co.*, 282 Conn. 594, 600–601, 922 A.2d 1073 (2007).

In the present case, in deciding that possession of the leased property should be awarded to the plaintiff,

---

[3] We note that the defendants did not file a motion for articulation concerning any of the court's findings or conclusions.

the court found the lease to be clear and unambiguous. The court construed various terms of the lease and concluded that the defendants would live rent free at 4 Benjamin Lane until the certificate of occupancy issued for 9 Benjamin Lane. Further, if the defendants remained at 4 Benjamin Lane after the date the certificate of occupancy was issued for 9 Benjamin Lane, the defendants were obligated to pay rent in the amount of $3500 per month. The court found that the defendants neither vacated the property at 4 Benjamin Lane when the certificate of occupancy for 9 Benjamin Lane was issued, nor began paying the monthly rental fee for 4 Benjamin Lane. The court, therefore, found in favor of the plaintiff and granted him possession of the leased property. Because the court construed several provisions of the lease to determine that possession should be awarded to the plaintiff, we agree with the defendants that the court necessarily determined that the lease was valid. We disagree, however, with the defendants' argument that the court also necessarily determined the validity of the certificate of occupancy and the relationship, if any, between the lease and the alleged purchase and sale contract. Indeed, the court so indicated in its memorandum of decision.[4]

Next, we must determine what effect, if any, the court's determination that the lease was valid has on the collateral consequences doctrine. We conclude that although the court found the lease to be valid for purposes of summary process, the defendants will not be collaterally estopped from relitigating that issue in the subsequent, pending action. In *Commissioner of Motor*

---

[4] In its memorandum of decision, the court stated: "The issues that the defendants have raised regarding agreements with the builder are matters which must be addressed in another court. This is an action for summary process, based on nonpayment of rent at 4 Benjamin Lane." In addition, during the trial, in response to the defendants' presentation of testimony regarding the validity of the certificate of occupancy, the court stated: "I'm not going to decide the validity of the certificate of occupancy in this action."

*Vehicles* v. *DeMilo & Co.*, 233 Conn. 254, 268–69, 659 A.2d 148 (1995), our Supreme Court adopted § 28 (1) of 1 Restatement (Second), Judgments (1982). Section twenty-eight provides in relevant part: "Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances: (1) [t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action . . . ." "Such cases can arise, for example, because the controversy has become moot . . . . Id., § 28, comment (a)." (Internal quotation marks omitted.) *Commissioner of Motor Vehicles* v. *DeMilo & Co.*, supra, 268. In *Commissioner of Motor Vehicles*, the court concluded that because the defendant's appeal from the judgment was deemed moot, the defendant was unable to obtain review as a matter of law. As such, § 28 (1) applied so as not to bar the defendant from relitigating the factual and legal issues decided in rendering that judgment. Following our Supreme Court's logic in that case, we conclude that if the present appeal is deemed moot, the defendants will not be barred from relitigating the issue of the validity of the lease in a subsequent action, precisely because, as a matter of law, the defendants were unable to obtain review of the judgment. As such, the defendants' argument that if we determine that the appeal is moot they will be collaterally estopped from relitigating the issue of the validity of the lease fails.

## II

## REPUTATION IN THE COMMUNITY

The defendants claim that their reputation in the community has been and will be adversely affected by the eviction judgment rendered against them. For this proposition, the defendants rely on *State* v. *McElveen*, 261

Conn. 198, 215–16, 802 A.2d 74 (2002), in which our Supreme Court deemed not moot the appeal from the trial court's revocation of the defendant's probation and order that he serve six months in prison even though he had served all of his jail time. The court reasoned that there were collateral consequences that reasonably could ensue as a consequence of a probation revocation, such as a negative impact on a defendant's standing in the community and the ability to secure employment. Here, the defendants have failed to show how a summary process eviction, in and of itself, damages a person's reputation in the community at all, much less that it rises to the level such that we would be inclined to recognize it as a collateral consequence that would allow this court to review an otherwise moot appeal. Contra *Putman* v. *Kennedy*, 279 Conn. 162, 900 A.2d 1256 (2006) (defendant's otherwise moot appeal of expired domestic violence restraining order reviewable because of its reasonably possible negative impact on reputation in community); *Williams* v. *Ragaglia*, 261 Conn. 219, 802 A.2d 778 (2002) (en banc) (foster parent's otherwise moot appeal regarding revocation of foster care license deemed reviewable due in part to possibility that revocation information would be disseminated through government agencies creating reasonable possibility of negative impact on reputation as foster parent); *Statewide Grievance Committee* v. *Whitney*, 227 Conn. 829, 633 A.2d 296 (1993) (attorney's otherwise moot appeal of expired suspension reviewable because of collateral consequences to attorney's reputation). Accordingly, we reject the defendants' argument.

III

DISCLOSURE OF JUDGMENTS

Scott Wells is an attorney for the Mohegan Sun Casino and claims that as an employee, he is required to maintain a gaming industry license. The defendants claim

that his gaming license will be affected adversely by the summary process judgment because he is required to disclose all judgments against him in accordance with certain gaming license requirements. The defendants do not, however, explain how his license adversely will be affected. Without more, we are unable to determine, without speculating, whether there is a reasonable possibility that prejudicial collateral consequences will occur.[5] See *Smith-Lawler* v. *Lawler*, supra, 97 Conn. App. 380. Because this court will not speculate on what is not in the record, we decline to review this claim. See *State* v. *Hermann*, 38 Conn. App. 56, 68, 658 A.2d 148, cert. denied, 235 Conn. 903, 665 A.2d 904 (1995).

We conclude that the defendants have failed to bring to our attention any adverse collateral consequences that will befall them, and, therefore, we cannot afford them any practical relief. The appeal is moot.

The appeal is dismissed.

In this opinion the other judges concurred.

---

[5] The defendants submitted an affidavit to this court in which Scott Wells attested to the fact that as part of maintaining his gaming license, he is required to disclose any and all judgments against him. That attestation is merely a restatement of the argument made in the defendants' brief and does not provide this court any more information than what is already in the record.