STATE OF CONNECTICUT *v.* ALISON BEGLEY
(AC 28754)

STATE OF CONNECTICUT *v.* ROCCO
T. CAPOBIANCO
(AC 28809)

STATE OF CONNECTICUT *v.* NICHOLAS J.
DELUCA, JR.
(AC 28897)

STATE OF CONNECTICUT *v.* MICHAEL D. PRICE
(AC 28882)

Flynn, C. J., and Robinson and West, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued November 18, 2008—officially released July 20, 2010

*Charles F. Willson*, for the appellants (defendants).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Adam B. Scott*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

ROBINSON, J. The defendants, Alison Begley, Rocco T. Capobianco, Nicholas J. DeLuca, Jr., and Michael D. Price, appeal from the trial court's denial of their respective motions to open[1] the "judgments"[2] that were

[1] Although the motions were entitled a "motion to reopen," we note that because the judgments had not previously been opened, "the use of that term is both improper and misleading. . . . The appropriate phrase is 'motion to open,' and we reference it in this opinion accordingly." (Citation omitted.) *Rino Gnesi Co.* v. *Sbriglio*, 83 Conn. App. 707, 709 n.2, 850 A.2d 1118 (2004).

[2] As we more fully explained in *State* v. *Wahab*, 122 Conn. App. 537, 2 A.3d 7 (2010), a case arising out of the same facts as in this case, we use the term "judgment" cautiously in this context. Indeed, General Statutes § 51-164n does not state how or when the payment of a fine for an infraction becomes a final judgment, if at all, and the procedure for entering a plea of nolo contendere under § 51-164n (c) appears at first blush to further

rendered against them for the infraction of possession of alcohol by a minor in violation of General Statutes (Rev. to 2007) § 30-89. On appeal, the defendants argue that the court's denial of their motions to open the judgments was both an improper application of relevant law and an abuse of discretion. We dismiss the defendants' appeals.

The record reveals the following facts and procedural history. On March 3, 2007, members of the Manchester police department, responding to a noise complaint, disbanded a party of mostly underage persons. The defendants, who were all under the age of twenty-one at the time,[3] were present at the party and were issued tickets charging each of them with the infraction of possession of alcohol by a minor in violation of § 30-89 (b).[4] The tickets each carried a fine of $136[5] and provided that the defendants were to check either the box on the tickets reading, "I elect to pay the amount," or the box reading, "I elect to plead not guilty." The defendants all paid their fines, and the central infractions bureau (bureau) received each payment within

obfuscate that analysis. Accordingly, because we did not reach that issue in *Wahab* or in this case, our references to the defendants' respective motions to open the judgments should not be construed as our imprimatur that there were judgments to be opened in these cases.

[3] Begley's date of birth is March 22, 1990. Capobianco's date of birth is November 28, 1987. DeLuca's date of birth is May 2, 1988. Price's date of birth is April 14, 1988.

[4] At the time, General Statutes (Rev. to 2007) § 30-89 (b) provided in relevant part: "Any minor who possesses any alcoholic liquor on public or private property shall, for a first offense, have committed an infraction . . . ." Number 07-167, § 49, of the 2007 Public Acts, effective June 25, 2007, amended subsection (b) to read: "Any minor who possesses any alcoholic liquor on (1) any public street or highway, or (2) in any other public or private location, shall, for a first offense, have committed an infraction . . . ."

[5] We note that pursuant to General Statutes § 51-164n (a), which governs the procedure on summons for infractions, "any person who is alleged to have committed an infraction . . . may plead not guilty or pay the established fine *and any additional fee or cost for the infraction* . . . ." (Emphasis added.) Accordingly, the total fine assessed on each defendant properly included the relevant fees and costs.

twenty days of the tickets being issued.[6] It is unclear from the record whether any of the defendants signed the complaint ticket in either of the designated plea boxes before paying the fine.[7]

Soon thereafter, the defendants each received notices from the department of motor vehicles, stating that their driver's licenses were being suspended for a period of 150 days pursuant to General Statutes (Rev. to 2007) § 14-111e.[8] Each defendant subsequently filed a motion to open the "judgment" with the Superior Court, all of which were denied.[9] Thereafter, each defendant filed a motion for articulation of the basis of the court's denial of their motions to open the judgments, and the court issued an articulation on December 3, 2007. Begley

[6] Capobianco's and Price's fines were received by the bureau on March 14, 2007. Begley's fine was received by the bureau on March 19, 2007. DeLuca's fine was received by the bureau on March 23, 2007.

[7] The defendants claim that only Price signed the ticket and that because they were all minors at the time, none of their signatures would have been valid had they signed the tickets. The front of the tickets provides a signature line on which to indicate that the person charged has *received* the ticket. The back of the tickets, however, is where the signature line pertaining to the plea is located. The record contains copies of only the front of the tickets, which Price was the only one to sign, and does not contain a copy of the back of any of the defendants' tickets.

[8] At the time, General Statutes (Rev. to 2007) § 14-111e (a) provided in relevant part: "The Commissioner of Motor Vehicles shall suspend, for a period of one hundred fifty days, the motor vehicle operator's license . . . of any person under the age of twenty-one who has been convicted of a violation of . . . section 30-89 involving the purchase and possession of alcoholic liquor by a minor." Section 14-111e was amended by Public Acts 2007, No. 07-167, § 50, in 2007 to reduce the period of suspension for a violation of § 30-89 (b) (1), as that statute was amended by Public Acts 2007, No. 07-167, § 49; see footnote 4 of this opinion; to sixty days and a violation of subsection (b) (2) to thirty days. The amended § 14-111e provides in relevant part that "[t]he commissioner shall conform any suspension for violation of section 30-89 that is in effect on June 25, 2007, to comply with the provisions of this section."

[9] Begley's motion to open the judgment was filed on March 29, 2007, and was denied on April 19, 2007. Capobianco's motion was filed and denied on April 23, 2007. Price's motion was filed on March 23, 2007, and denied on March 27, 2007. DeLuca's motion was filed and denied on June 11, 2007.

appealed on April 27, 2007, Capobianco appealed on May 11, 2007, and both Price and DeLuca appealed on June 11, 2007. Begley filed a motion to consolidate the four appeals on June 29, 2007, which this court granted on August 13, 2007.

On appeal, the defendants claim that the court improperly denied their motions to open the judgments because it misapplied the law and abused its discretion. Specifically, the defendants argue that (1) their pleas of nolo contendere to the infraction of possession of alcohol by a minor were not submitted to the bureau in compliance with the relevant statutory provisions and were, therefore, a nullity ab initio, (2) they were not afforded their rights to due process of law as enshrined in the constitution of Connecticut and in the United States constitution, (3) they were induced to pay their fines on the false representations of the police officers issuing the tickets and (4) the court abused its discretion by making clearly erroneous findings of fact. The state argues that the court lacked subject matter jurisdiction to consider the defendants' motions to open the judgments because there is no statutory framework providing the court with the authority to consider any motions from the defendants after they had paid their fines and that we lack subject matter jurisdiction to hear these appeals because they are moot. In the alternative, the state argues that the court applied the law correctly and did not abuse its discretion.

Before reaching the merits of the defendants' appeals, we first determine whether the cases have been rendered moot because the defendants have already paid their respective fines. "Mootness is a threshold issue that implicates subject matter jurisdiction, which imposes a duty on the court to dismiss a case if the court can no longer grant practical relief to the parties. . . . Mootness presents a circumstance wherein the issue before the court has been resolved or had lost its

significance because of a change in the condition of affairs between the parties. . . . [T]he existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . Our Supreme Court, however, has allowed us to retain jurisdiction where the matter being appealed creates collateral consequences prejudicial to the interests of the appellant, even though developments during the pendency of the appeal would otherwise render it moot. . . .

"[T]o invoke successfully the collateral consequences doctrine, the litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur. Accordingly, the litigant must establish these consequences by more than mere conjecture, but need not demonstrate that these consequences are more probable than not. This standard provides the necessary limitations on justiciability underlying the mootness doctrine itself. Whe[n] there is no direct practical relief available from the reversal of the judgment . . . the collateral consequences doctrine acts as a surrogate, calling for a determination whether a decision in the case can afford the litigant some practical relief in the future." (Citations omitted; internal quotation marks omitted.) *Iacurci* v. *Wells*, 108 Conn. App. 274, 276–77, 947 A.2d 1034 (2008).

In this case, the defendants have each paid their respective fines, rendering their appeals moot unless they have established that there is a reasonable possibility that prejudicial collateral consequences will occur. In this respect, the defendants aver that the suspension of their driver's licenses and the resulting increase in insurance premiums constitute such collateral consequences. Upon our review of the record, however, we conclude that the defendants have not provided this

court with a record containing any evidence that any of them still have pending driver's license suspensions or that their insurance premiums will increase. Nor have any other collateral consequences been brought to our attention. Price and DeLuca filed motions with this court, requesting that we direct the commissioner of motor vehicles (commissioner) to stay their driver's license suspensions during the pendency of their appeals. This court denied the motions, and it is unclear whether Price and DeLuca had their suspensions stayed at any point. Without more, we are unable to determine, without speculating, whether there is a reasonable possibility that prejudicial collateral consequences will occur.[10] See id., 283, citing *Smith-Lawler* v. *Lawler*, 97 Conn. App. 376, 380, 904 A.2d 1235 (2006). Because this court will not speculate on what is not in the record, we decline to review this claim. See *State* v. *Hermann*, 38 Conn. App. 56, 68, 658 A.2d 148, cert. denied, 235 Conn. 903, 665 A.2d 904 (1995). Consequently, because the defendants have failed to produce a record on appeal that substantiates their claim that it is reasonably possible that adverse collateral consequences will befall them, there is not a basis on which we retain our jurisdiction.

In addition, we are not persuaded by the defendants' argument that their appeals are not moot because their payments of the fines were involuntary. See *State* v. *Walczyk*, 76 Conn. App. 169, 172–73, 818 A.2d 868 (2003) (General Statutes § 54-96a, which dictates that payment of fines before Appellate Court hearing "shall vacate the appeal," not applicable if fine payment involuntary).

[10] In their motions, Price and DeLuca stated that the commissioner had already stayed the suspensions of Begley and Capobianco, but this claim is unsubstantiated by any evidence in the record. See *In re Justin F.*, 116 Conn. App. 83, 96, 976 A.2d 707 ("It is idiomatic that argument is not evidence. As judges routinely admonish juries: Argument is argument, it is not evidence." [Internal quotation marks omitted.]), cert. dismissed, 292 Conn. 913, 973 A.2d 660, cert. denied, 293 Conn. 914, 978 A.2d 1109 (2009).

In the first instance, it bears emphasis that § 54-96a does not apply to the current situation. That statute provides: "Any person appealing from the judgment of the Superior Court, adjudging him to pay a fine only, may pay the same at any time before the hearing in the Supreme Court or Appellate Court, without further cost, which payment shall vacate the appeal and restore the judgment." General Statutes § 54-96a. In this case, however, it does not appear that the defendants were ever "adjudged" by the Superior Court. Indeed, the defendants in this case never appeared before a judge of the Superior Court, which stands in contradistinction to our precedent applying § 54-96a. See, e.g., *State* v. *Ryder*, 111 Conn. App. 271, 958 A.2d 797 (2008) (court accepted defendant's plea of nolo contendere and sentenced him to pay fine for infraction), aff'd after remand, 114 Conn. App. 528, 969 A.2d 818, cert. granted on other grounds, 292 Conn. 919, 974 A.2d 723 (2009); *State* v. *Eastman*, 92 Conn. App. 261, 884 A.2d 442 (2005) (same); *State* v. *Walczyk*, supra, 172 (court found defendant guilty and sentenced him to pay fine); *State* v. *Arpi*, 75 Conn. App. 749, 818 A.2d 48 (2003) (court accepted defendant's plea of guilty and sentenced him to pay fine); *State* v. *Henkel*, 23 Conn. Sup. 135, 177 A.2d 684 (1961) (court found defendant guilty and sentenced him to pay fine).

Moreover, in addition to § 54-96a not being applicable to this case, *State* v. *Walczyk*, supra, 76 Conn. App. 169, otherwise is distinguishable. In *Walczyk*, the defendant claimed that the court's actions led to his plea being involuntary, and the state did not contest the involuntary nature of the defendant's plea. Id., 173. In the present case, by contrast, the alleged involuntariness stems from the conduct of the issuing police officers in giving the defendants what they believe to be bad advice regarding the payment of the fines, rather than any conduct on the part of the court, and the state disputes

the defendants' claim of involuntariness. Accordingly, because we conclude that § 54-96a is inapplicable to this case and that *Walczyk* is inapposite to the facts here, we are not persuaded by the defendants' argument that their cases are not moot.

We conclude that the defendants' appeals are moot and, therefore, dismiss the appeals.[11] Further, we order

[11] Furthermore, we conclude that even if the defendants' appeals were not moot, their arguments are briefed inadequately for our review. Specifically, the defendants' brief fails to provide cogent analysis or supporting precedent for their arguments that (1) fines for infractions cannot include fees and costs if the total fine exceeds $90, (2) infraction pleas become a nullity if the fine is paid without signing the infraction ticket, (3) the adjudication of an infraction is tantamount to a criminal prosecution and is entitled to the same procedural safeguards afforded to defendants charged with a crime and (4) information provided to people accused of an infraction by police officers regarding the legal ramifications of paying the requisite fine versus pleading not guilty is akin to a canvass by a court prior to a court's accepting a plea. See *Connecticut Coalition Against Millstone* v. *Connecticut Siting Council*, 286 Conn. 57, 87, 942 A.2d 345 (2008) ("We are not obligated to consider issues that are not adequately briefed. . . . Whe[n] an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived. . . . In addition, mere conclusory assertions regarding a claim, with no mention of relevant authority and minimal or no citations from the record, will not suffice." [Citations omitted; internal quotation marks omitted.]).

Moreover, aside from the issue of mootness, the record provided by the defendants on appeal likewise is inadequate for our review. In particular, the court's reference in its articulation to ex parte meetings with the Manchester police department and the accompanying, sequential conclusions that "alcohol, marijuana and cocaine were in plain view" at the party and that "[t]here is no merit to the defendants' motion[s] and thus [they were] denied" appear to be unrelated to the procedural question the court was addressing and, therefore, creates confusion in the court's reason for denying the defendants' respective motions to open the judgments. See *Stone-Krete Construction, Inc.* v. *Eder*, 280 Conn. 672, 685–86, 911 A.2d 300 (2006) ("It is well established that [a]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . [P]roper utilization of the motion for articulation serves to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal." [Internal quotation marks omitted.]). Therefore, although the court provided an articulation of its decision, further articulation was necessary. See Practice Book § 66-5.

the court to rectify the record by omitting the phrase "the crime(s) of" from the judgment files issued on August 27, 2008, for each defendant in order to reflect accurately that each was charged with the *infraction* of possession of alcohol by a minor in violation of § 30-89 (b). Similarly, in order to reflect their pleas of nolo contendere to that infraction, the court is ordered to rectify the record by substituting the words, "The Central Infractions Bureau," for the words, "The Court," and by substituting the words, "accepted the plea of nolo contendere," where the judgment files of August 27, 2008, that relate to the motions to open currently read "entered the verdict of guilty."[12]

The appeals are dismissed; pursuant to this court's supervisory powers set forth in Practice Book § 60-2, the cases are remanded with direction to rectify the record in accordance with this opinion.

In this opinion the other judges concurred.

---

[12] Although this court finds that it does not have jurisdiction to hear the present appeals, it orders the trial court to rectify the record under this court's supervisory power over the administration of justice. "[O]ur supervisory powers are invoked only in the rare circumstance where [the] traditional protections are inadequate to ensure the fair and just administration of the courts . . . ." (Internal quotation marks omitted.) *State* v. *Elson*, 116 Conn. App. 196, 247, 975 A.2d 678 (2009). In the present case, such a situation would be manifest should the record reflecting the defendants' violations of § 30-89 (b) not be changed to state that they were charged with an infraction, rather than a crime.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.