******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

WE THE PEOPLE OF CONNECTICUT, INC., ET AL. *v.*
DANNEL P. MALLOY
(AC 35143)

Beach, Robinson and Sheldon, Js.*

*Argued December 9, 2013—officially released May 27, 2014*

(Appeal from Superior Court, judicial district of
Hartford, Graham, J.)

*Deborah G. Stevenson*, for the appellants (plaintiffs).

*Jane R. Rosenberg*, assistant attorney general, with
whom, on the brief, were *George Jepsen*, attorney general, *Perry Zinn Rowthorn*, deputy attorney general,
and *Robert Deichert*, assistant attorney general, for the
appellee (defendant).

*Opinion*

BEACH, J. The plaintiffs, We the People of Connecticut, Inc., Maria Nelson, Laurie Wojnarowski, Mary D. Mathes, Angela Griffs, Jay Kiley, and Linda Garamello-Fusco, appeal from the judgment of the trial court granting the motion to dismiss of the defendant, Governor Dannel P. Malloy. We affirm the judgment of the trial court.

The following relevant facts are undisputed. In March, 2011, Senate Bill No. 1106, providing for a collective bargaining process for family child care providers, was proposed in the General Assembly. In June, 2011, the legislature adjourned without voting on the bill.

On September 21, 2011, the defendant issued Executive Order No. 9, which prescribed a process by which a majority representative of family child care providers who participate in the child care subsidy program under General Statutes § 17b-749, was to be selected. It provided that the representative was to meet and confer with representatives of the Department of Social Services and any other executive branch representatives deemed appropriate by the defendant to discuss certain designated topics; it further provided that a working group was to be appointed by the defendant on or before October 1, 2011, for the purpose of making recommendations regarding the structuring of collective bargaining rights for family child care providers. Not later than February 1, 2012, the working group was to report its findings to the defendant. On the same day, the defendant also issued Executive Order No. 10, which was similar to Executive Order No. 9, but pertained to personal care attendants. It provided (1) for the election of a majority representative of personal care attendants, (2) for the establishment of a working group on or before October 1, 2011, for the purpose of determining how best to structure collective bargaining rights for personal care attendants, and (3) that the working group report its findings to the defendant no later than February 1, 2012.

Pursuant to the executive orders, the election for the majority representative of family child care providers concluded in December, 2011, and the election for the majority representative of personal care assistants concluded in March, 2012. Both groups selected the Service Employees International Union to be their majority representative. The final reports of the working groups for family child care providers and personal care attendants were issued on February 15, 2012.

In March, 2012, the plaintiffs instituted an action in the Superior Court alleging that, by issuing Executive Orders Nos. 9 and 10, the defendant exceeded his authority and violated the principle of separation of powers as provided in articles second, fourth and eleventh of the Connecticut constitution. The plaintiffs

claimed that they were specifically harmed by the issuance of the executive orders procedurally and substantively, by not being able to participate in the election procedure, by being represented by an entity that was elected in an illegal procedure, by not having the legislature make the law establishing the election procedure, and by not having an orderly form of government based on the separation of powers as established and guaranteed by the Connecticut constitution. In their prayer for relief, the plaintiffs sought injunctive relief invalidating Executive Orders Nos. 9 and 10.

In March, 2012, the defendant filed a motion to dismiss the plaintiffs' complaint on the ground of mootness.[1] In a memorandum of law in support of the motion, the defendant argued that the complaint was moot because of legislation then pending. The legislation then pending was enacted two months later.

In May, 2012, the legislature enacted No. 12-33 of the 2012 Public Acts, effective July 1, 2012.[2] Public Act 12-33 provided that "family child care providers," defined in the act to be persons who provide child care services pursuant to § 17b-749, were to have the right to bargain collectively. The act prescribed a collective bargaining process. Public Acts 2012, No. 12-33, § 2. It further provided that the Commissioner of Social Services was to compile a list of names of family child care providers who participated in the § 17b-749 subsidy program on or after July 1, 2012, and the list was to be updated on a monthly basis. Public Acts 2012, No. 12-33, § 2 (c). Public Act 12-33, § 2 (g) provided: "Any provider organization certified as the majority representative of family child care providers in any election held prior to the effective date of this section pursuant to Executive Order Number 9 of Governor Dannel P. Malloy may provide proof of such certification to the State Board of Labor Relations and the State Board of Labor Relations shall certify such majority representative as the exclusive bargaining agent for such providers without the requirement of an additional election unless and until such time as a question concerning representation is appropriately raised under this section and section 1 of this act."

Public Act 12-33, § 6 provided that personal care attendants also were to have the right to bargain collectively, and it prescribed a similar collective bargaining process. It established a personal care attendant workforce council to "ensure the quality of . . . care." Public Acts 2012, No. 12-33, § 5 (a). It provided that the workforce council was to compile a list of names of personal care attendants no later than October 1, 2012, to be revised monthly thereafter. Public Acts 2012, No. 12-33, § 5 (f) (1). Public Act 12-33, § 6 (f) provided: "Any organization certified as the majority representative of personal care attendants in any election held prior to the effective date of this section pursuant to Executive

Order Number 10 of Governor Dannel P. Malloy, may provide proof of such certification to the State Board of Labor Relations and the State Board of Labor Relations shall certify such majority representative as the exclusive bargaining agent for such personal care attendants without the requirement of an additional election unless and until such time as a question concerning representation is appropriately raised under this section and section 2 of this act."

The court issued a memorandum of decision in October, 2012, granting the defendant's motion to dismiss. The court held that the issue was moot because the public act replaced the executive orders and that no practical relief could be given to the plaintiffs with respect to the executive orders. This appeal followed.

"Mootness . . . implicates subject matter jurisdiction, which imposes a duty on the [trial] court to dismiss a case if the court can no longer grant practical relief to the parties." (Internal quotation marks omitted.) *Curley* v. *Kaiser*, 112 Conn. App. 213, 229, 962 A.2d 167 (2009). "Mootness presents a circumstance wherein the issue before the court has been resolved or had lost its significance because of a change in the condition of affairs between the parties." (Internal quotation marks omitted.) *State* v. *Begley*, 122 Conn. App. 546, 550–51, 2 A.3d 1 (2010). "A case becomes moot when due to intervening circumstances a controversy between the parties no longer exists." (Internal quotation marks omitted.) *Waterbury Hospital* v. *Connecticut Health Care Associates*, 186 Conn. 247, 252, 440 A.2d 310 (1982).

The plaintiffs claim that the issues raised in their complaint were not moot, but rather that the executive orders have had a continuing legal effect and exist side by side with Public Act 12-33.[3] They contend that the public act itself demonstrates that the procedures for electing majority representatives of family child care providers and personal care attendants, respectively, have an ongoing legal effect because the public act provides that the victors of election procedures conducted pursuant to the executive orders were to continue to act as exclusive bargaining agents for their respective groups until such time as new elections should be held.

There is no practical relief that can be given to the plaintiffs. Executive Orders Nos. 9 and 10 provided, respectively, for elections of majority representatives of family child care providers and personal care attendants. The executive orders also provided for the establishment of working groups that were to report findings regarding collective bargaining to the governor no later than February 1, 2012. The legislature passed Public Act 12-33, which, for purposes of the claims raised in the present case, entirely replaced Executive Orders Nos. 9 and 10. The act established collective bargaining

for the two groups at issue and further provided that the majority representatives of family child care providers and personal care attendants, as elected in Executive Orders Nos. 9 and 10, respectively, were to act as the exclusive bargaining agents without the need for new elections. Even if the executive orders were rescinded, Public Act 12-33 would still be in place. Any challenge would now appropriately be addressed, if at all, to the legislation. The requested remedy, in this case, then would have no practical effect.[4]

The plaintiffs argue in the alternative that their claims fall under the "capable of repetition yet evading review" exception to the mootness doctrine. To qualify under this exception, an otherwise moot question must satisfy the following three requirements: "First, the challenged action, or the effect of the challenged action, by its very nature, must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot." (Internal quotation marks omitted.) *In re Priscilla A.*, 122 Conn. App. 832, 836, 2 A.3d 24 (2010).

The plaintiffs' claim is of public importance, but the plaintiffs have not demonstrated that the effect of the executive orders, by their very nature, is of such limited duration that there is a strong likelihood that the substantial majority of cases raising a question about the validity of similar orders will become moot before litigation has concluded. We have no information before us to lead us to conclude that most executive orders are of inherently short duration. The plaintiffs contend that in this case, the defendant, aware of the judicial challenge to the executive orders, hastened the ratifying legislation through the General Assembly, and that any executive order could escape judicial review by a similar process. Both the premise and the conclusion of the argument are purely speculative. Finally, there has been no demonstration that the question presented in this case will arise again and will affect the same persons or any similar group.

The judgment is affirmed.

In this opinion the other judges concurred.

\* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The motion to dismiss also alleged lack of standing and sovereign immunity. The trial court did not reach these grounds, nor do we.

[2] Public Act 12-33 is now codified as General Statutes § 17b-705 et seq.

[3] The plaintiffs also argue that the trial court ignored the appropriate standard of review for a motion to dismiss when it failed to analyze whether their complaint stated a cause of action and instead determined that their

claim was moot. The court did not apply an incorrect standard. A motion to dismiss properly attacks the jurisdiction of the court; *Hayes Family Ltd. Partnership* v. *Glastonbury*, 132 Conn. App. 218, 221, 31 A.3d 429 (2011); and mootness implicates a court's subject matter jurisdiction. *Sweeney* v. *Sweeney*, 271 Conn. 193, 201, 856 A.2d 997 (2004).

[4] The plaintiffs also argue that Public Act 12-33 is unconstitutional. We cannot review this claim. Our review of the complaint reveals that it cannot reasonably be construed to include a challenge to the constitutional validity of Public Act 12-33. See *Young* v. *Vlahos*, 103 Conn. App. 470, 476, 929 A.2d 362 (2007) (interpretation of pleadings question of law subject to plenary review), cert. denied, 285 Conn. 913, 943 A.2d 474 (2008). The trial court did not consider or rule on the validity of Public Act 12-33.