******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# WINDHAM SOLAR, LLC *v.* PUBLIC UTILITIES REGULATORY AUTHORITY ET AL.
## (AC 41918)

DiPentima, C. J., and Prescott and Devlin, Js.

*Syllabus*

The plaintiff, W Co., sought to sell to the defendant E Co. the energy and capacity from twenty-six solar electric generating facilities. E Co. agreed to purchase the energy, but not the capacity, and rejected W Co.'s offer to sell the energy at a rate equal to the anticipated avoided costs over the life of the proposed thirty year contract. W Co. then filed a petition with the defendant Public Utilities Regulatory Authority, pursuant to statute (§ 16-243a), seeking an order to compel E Co. to enter into the contract to purchase the energy and the capacity in accordance with W Co.'s proposed pricing. W Co. claimed that E Co. had failed to negotiate in good faith to arrive at a contract that fairly reflected the requirements of § 16-243a and the anticipated avoided costs over the life of the contract. The authority denied W Co.'s petition, concluding that E Co. did not need the capacity offered by W Co. and that the avoided cost of the proffered capacity was zero. The authority further determined that W Co.'s petition sought a declaratory judgment and held that it would open a separate proceeding to consider whether its regulations required modification or amendment. After W Co. appealed to the trial court, that court granted an unopposed request from the authority to remand the matter to the authority to consider the effect of recent rulings by the Federal Energy Regulatory Commission on the authority's denial of W Co.'s petition. The court retained jurisdiction over W Co.'s appeal. The authority thereafter reversed its initial decision denying W Co.'s petition, concluding that W Co.'s claims should be addressed through the authority's rule-making proceeding. The authority then filed a motion to dismiss W Co.'s appeal on the ground that the court lacked subject matter jurisdiction because W Co. was not aggrieved by the authority's two decisions and that the appeal had become moot as a result of the authority's reversal of its initial decision. The court granted the authority's motion to dismiss, concluding that it lacked subject matter jurisdiction because W Co. had failed to plead facts sufficient to establish aggrievement and that W Co.'s appeal was moot as a result of the authority's reversal of its initial decision. The court thereafter rendered judgment for the authority, and W Co. appealed to this court, claiming that the trial court improperly concluded that it did not have standing and that its claims were moot. *Held* that the trial court improperly granted the authority's motion to dismiss W Co.'s petition, as W Co. had standing to appeal, having satisfied the requirements of the test for classical aggrievement, and its claims were not moot because there was practical relief that it could have been afforded by the trial court: W Co. had a specific, personal and legal interest in the issue at hand in that it sought an order from the authority to approve and to compel the execution of the power purchase agreement and alleged that it had been specially and injuriously affected by the authority's refusal to compel E Co. to execute the contract, and, in determining that W Co.'s claims were moot as a result of the authority's second decision, the trial court conflated notions of relief that may be afforded to W Co. with relief to which W Co. was entitled when it improperly addressed the merits of W Co.'s claims and discussed the authority's options to address those claims directly or generically through the authority's regulatory proceeding; moreover, the court could have afforded W Co. practical relief by reversing the authority's decision to address the petition through its rule-making proceeding and remanding the matter with direction to consider the issues presented by the petition, or the court could have addressed issues the authority decided in its initial decision that it did not reverse or left unresolved in its subsequent decision.

Argued November 19, 2019—officially released March 3, 2020

Appeal from the decision by the named defendant denying the plaintiff's petition to compel the defendant Connecticut Light and Power Company, doing business as Eversource Energy, to enter into a certain contract for the sale of energy, brought to the Superior Court in the judicial district of New Britain, where the court, *Huddleston, J.*, granted the motion to intervene as a defendant filed by the Office of Consumer Counsel; thereafter, the court granted the named defendant's motion to remand the matter to the named defendant for further proceedings; subsequently, the court, *Hon. Joseph M. Shortall*, judge trial referee, granted the named defendant's motion to dismiss and rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed*; *further proceedings*.

*Thomas Melone*, for the appellant (plaintiff).

*Seth A. Hollander*, assistant attorney general, with whom was *Robert L. Marconi*, assistant attorney general, for the appellee (named defendant).

*Vincent P. Pace*, assistant general counsel, with whom, on the brief, was *Jennifer Galiette*, senior counsel, for the appellee (defendant Connecticut Light and Power Company, doing business as Eversource Energy).

*Opinion*

DEVLIN, J. In this administrative appeal seeking regulatory remedies with respect to a proposed contract for the sale of energy, the plaintiff, Windham Solar, LLC, appeals from the judgment of dismissal rendered by the trial court on the ground that it lacked subject matter jurisdiction. The plaintiff claims that the court erred in concluding that it did not have standing to bring this administrative appeal and that, even if it did, its claims were moot. We agree with the plaintiff and reverse the judgment of the trial court.

The record reveals the following undisputed factual and procedural history. On January 22, 2016, the plaintiff offered to sell to Connecticut Light & Power, doing business as Eversource Energy (Eversource),[1] all of the energy and capacity from twenty-six solar electric generating facilities, all of which are qualifying facilities under the Public Utility Regulatory Policies Act of 1978 (PURPA), 16 U.S.C. § 2601 et seq. See 16 U.S.C. § 796 (17) (C) (2012). In response, Eversource acknowledged its obligation under General Statutes § 16-243a (b) (2) to purchase the power offered by the plaintiff,[2] but agreed to purchase only the energy, not the capacity, and rejected the plaintiff's offer to sell the energy at the rate equal to the anticipated avoided costs over the life of the proposed thirty year contract.

As a result of Eversource's refusal to accept the terms of its offer, the plaintiff filed a petition with the defendant Public Utilities Regulatory Authority (PURA), alleging that Eversource had failed to "negotiate in good faith to arrive at a contract which fairly reflects the provisions of [§ 16-243a] and the anticipated avoided costs over the life of the contract," and sought an order from PURA compelling Eversource to enter into a thirty year contract to purchase energy and capacity in accordance with its proposed pricing.[3]

On August 24, 2016, PURA issued a written decision denying the plaintiff's petition to compel Eversource to enter into a contract on the plaintiff's terms. PURA found, inter alia, that Eversource did not need the capacity offered by the plaintiff and that "the avoided cost of the proffered capacity is zero." PURA further explained that "[the plaintiff's] petition is properly understood as asking whether PURA's long-standing implementation of . . . [PURPA], through § 16-243a and various orders of [PURA], is consistent with federal law." PURA thus "interpreted [the plaintiff's] petition as a request for a declaratory ruling pursuant to [General Statutes] § 4-176" and held that it would "open a separate proceeding to consider whether its regulations promulgated pursuant to . . . § 16-243a require modification or amendment."

The plaintiff thereafter appealed to the trial court from PURA's August 24, 2016 decision. While that

appeal was pending, the Federal Energy Regulatory Commission (FERC) issued an order construing PURPA to require a real-time price offering and also an option under which avoided costs are forecasted at the time the contract is executed. Consequently, PURA requested, and was granted, a voluntary and unopposed remand from the trial court, while the court retained jurisdiction over the plaintiff's appeal, to consider the effect of the FERC ruling on PURA's August 24, 2016 decision.

As a result of that reconsideration on remand, PURA issued a decision on January 10, 2018, reversing its August 24, 2016 decision, and holding that its earlier decision "incorrectly determined that PURPA's requirements are satisfied by real-time avoided cost offerings only, and that forecasted avoided cost rates are not necessary." PURA further concluded "that its PURPA regulations should be amended to incorporate a forecasted avoided cost rate methodology and other changes necessary as a result of electric restructuring and [the Federal Energy Policy Act of 2005], and [it] will address these issues in the [r]egulations [p]roceeding." PURA explained in a letter to the plaintiff's counsel that it was "not required, as a matter of law, to resolve [the plaintiff's claims] on a case-by-case basis . . ." but, rather, that it had " 'the statutory authority to revisit its implementation of FERC's rules, either through a new rule making, a case-by-case adjudication, or other reasonable method.' *Allco Renewable Energy Ltd.* v. *Massachusetts Electric Co.*, [875 F.3d 64, 74 (1st Cir. 2017)] . . . . [PURA] concludes that it should revisit its implementation of FERC's rules through a regulations proceeding." PURA thus determined that the issues presented by the plaintiff's petition "should be addressed generically through PURA's rule-making proceeding."

Dissatisfied with PURA's decision, the plaintiff, on February 1, 2018, filed a motion to restore its case to the trial court docket, asking that its original appeal be permitted to proceed. PURA filed an objection to the plaintiff's motion to restore its appeal to the docket, and a motion to dismiss the plaintiff's appeal on the ground that the court lacked subject matter jurisdiction over the plaintiff's appeal because the plaintiff was not aggrieved by PURA's decisions and the plaintiff's appeal had become moot as a result of PURA's reversal of its August 24, 2016 decision. The plaintiff filed an objection to PURA's motion to dismiss, arguing, inter alia, that, although PURA "overturned much of its [August 24, 2016] decision, it concluded that it would not address the particular circumstances of [the plaintiff's] petition, or address the relief sought by [the plaintiff]."

The trial court agreed with PURA that the plaintiff failed to plead facts sufficient to establish aggrievement and, thus, that the court lacked subject matter jurisdic-

tion over the plaintiff's appeal. The court further determined that the plaintiff's appeal was moot by virtue of PURA's January 10, 2018 decision reversing its earlier determination that "facilities like [the] plaintiff's are not entitled to sell their output to a utility at a forecasted avoided-cost rate. [PURA] has undertaken to develop via regulation a methodology for calculating such a rate." The court thus granted PURA's motion to dismiss, and this appeal followed.

"As a preliminary matter, we set forth the standard of review. A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting [decision to] grant . . . the motion to dismiss will be de novo. . . .

"[I]t is the burden of the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute. . . . It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. . . . Because a determination regarding the trial court's subject matter jurisdiction raises a question of law, our review is plenary." (Citations omitted; internal quotation marks omitted.) *Wilcox* v. *Webster Ins., Inc.*, 294 Conn. 206, 213–14, 982 A.2d 1053 (2009).

The plaintiff first challenges the trial court's determination that it failed to demonstrate that it was aggrieved by PURA's decisions and was thus without standing to appeal from them. "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless [it] has . . . some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the [party] whose standing is challenged is a proper party to request an adjudication of the issue. . . . Standing requires no more than a colorable claim of injury; a [party] ordinarily establishes . . . standing by allegations of injury [that it has suffered or is likely to suffer]. Similarly, standing exists to attempt to vindicate arguably protected interests. . . .

"Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The fundamental test for determining [classical] aggrievement encompasses a [well settled] twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the subject matter of the challenged action], as distinguished from

a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) Id., 214–15.

Here, in considering the plaintiff's claim that it was aggrieved by PURA's decisions,[4] the court concluded that, "[c]onstruing the complaint[5] in a manner most favorable to [the] plaintiff, it may allege the 'specific, personal and legal interest in the subject matter of the controversy,' which is the first element necessary to make out classical aggrievement: '[The plaintiff] filed a petition . . . with [PURA] under . . . § 16-243a to compel and approve the execution of the power purchase agreement offered by [the plaintiff] to Eversource. [PURA's] final decision rejected [the plaintiff]'s petition.' . . . No matter how generously construed, however, the complaint fails to allege facts supporting the second essential element of classical aggrievement, i.e., how that interest has been 'specially and injuriously affected' by [PURA's] decision." (Citation omitted; footnote added.)

On the basis of our review of the plaintiff's pleadings, we conclude that the plaintiff satisfies the requirements of classical aggrievement and, therefore, has standing to appeal from the decisions of PURA. First, it cannot reasonably be disputed that the plaintiff has a specific, personal and legal interest in the issue at hand because its petition to PURA sought an order to approve and compel the execution of the power purchase agreement under which the plaintiff offered to sell to Eversource all of the energy and capacity from twenty-six solar electric generating facilities to Eversource but which Eversource rejected in part. The plaintiff likewise has alleged that its specific legal interest in the petition to compel the execution of the contract has been specially and injuriously affected by PURA's refusal to compel Eversource to execute the contract. Because we conclude that the plaintiff has satisfied the requirements of the test for demonstrating classical aggrievement, it has standing to appeal from PURA's decisions.

The plaintiff also challenges the trial court's dismissal of its claims as moot. "[I]t is not the province of [the] courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . When . . . events have occurred that preclude [the] court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Abel* v. *Johnson*, 194 Conn. App. 120, 149–50, 220 A.3d 843 (2019), cert. granted on other

grounds, 334 Conn. 917, A.3d (2020). Our review of the trial court's conclusion that the plaintiff's claims are moot is plenary. Id., 150.

Here, PURA argues, and the trial court agreed, that the plaintiff's appeal was rendered moot as a result of PURA's January 10, 2018 reversal of its August 24, 2016 decision rejecting the pricing and terms of the plaintiff's offer to Eversource. We disagree.

In ruling on the plaintiff's petition on August 24, 2016, PURA explained that the petition "is properly understood as asking whether PURA's long-standing implementation of . . . [PURPA], through . . . § 16-243a and various orders of [PURA], is consistent with federal law. Upon review of the entire record of this proceeding, [PURA] interpreted [the plaintiff's] petition as a request for a declaratory ruling pursuant to § 4-176." Thus, when PURA reversed its August 24, 2016 decision, it did so in the limited context of its having "treated [the plaintiff's] petition as asking whether PURA's long-standing implementation of PURPA was consistent with federal law." Although that is certainly one aspect of the plaintiff's petition, PURA did not address the substance of the plaintiff's petition per se, as it did not contemplate the entirety of the plaintiff's requested relief. PURA articulated that it was "not required, as a matter of law, to resolve [the] issues [raised by the plaintiff's petition] on a case-by-case basis" but that it was within its rights to address the plaintiff's petition "generically though PURA's rule-making proceeding." PURA's articulation underscores the fact that PURA's reversal of its August 24, 2016 decision did not render the plaintiff's appeal from that decision moot.

In concluding that the plaintiff's claims became moot as a result of PURA's January 10, 2018 decision, the trial court specifically discussed PURA's authority to address the plaintiff's claims either generically through the regulatory proceeding or directly. In so doing, the trial court was addressing the propriety of PURA's decision and, thus, the merits of the plaintiff's claims. The analysis that the trial court conducted to determine whether the plaintiff's claims were moot was improper, however, because, "[i]n determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way." (Internal quotation marks omitted.) *Estela* v. *Bristol Hospital, Inc.*, 165 Conn. App. 100, 107, 138 A.3d 1042, cert. denied, 323 Conn. 904, 150 A.3d 681 (2016). The availability of practical relief to a party for his or her claims is a question separate from whether the court will ultimately determine that it is appropriate to provide that party with any relief that is available to him or her. See *Iacurci* v. *Wells*, 108 Conn. App. 274, 276, 947 A.2d 1034 (2008) (court must determine whether case is moot *before* addressing merits of defendants' appeal). Indeed, determining whether practical relief is available to a

party necessarily precedes a court's assessing the merits of that party's claims because "[i]f a case has become moot, [the court] lack[s] subject matter jurisdiction to *address its merits.*" (Emphasis added.) *State* v. *Walczyk*, 76 Conn. App. 169, 172, 818 A.2d 868 (2003). Thus, in the present case, the trial court improperly conflated the notions of relief that may afforded to the plaintiff and relief to which the plaintiff is entitled.

Although the plaintiff may not be entitled to the relief that it seeks, there is practical relief that the trial court may afford to it. For instance, the court may reverse PURA's decision to address the plaintiff's petition generically through its rule-making proceeding and remand the matter with direction to consider specifically the issues presented by the plaintiff's petition. The court may also address issues decided by PURA in its August 24, 2016 decision that it did not reverse in its January 10, 2018 decision. In its appeal to the trial court, the plaintiff claimed that PURA improperly made factual findings, such as the finding that Eversource did not have a capacity obligation, without affording the plaintiff either the opportunity to conduct discovery or an evidentiary hearing. PURA's January 10, 2018 decision did not address those findings, leaving the plaintiff's claims regarding them unresolved. Likewise, PURA's January 10, 2018 decision did not address the plaintiff's claim that Eversource violated its obligation under § 16-243a (d) to negotiate in good faith and its argument that such obligation was "independent of whatever schedules have been, or should have been, published under § 16-243a (c)."

It is not the role of this court, at this juncture, to determine the merits of the plaintiff's claims for relief. The limited issue with which we are faced is whether the trial court properly concluded that it did not have subject matter jurisdiction over the plaintiff's claims. Because there was practical relief that the trial court could have afforded, we conclude that the plaintiff's claims were not moot and, thus, that the court has subject matter jurisdiction over them. Accordingly, the trial court erred in granting PURA's motion to dismiss.

The judgment is reversed and the case is remanded with direction to deny PURA's motion to dismiss and for further proceedings according to law.

In this opinion the other judges concurred.

[1] Eversource and the Office of Consumer Counsel also are defendants in this proceeding.

[2] To implement the provisions of PURPA, the Connecticut legislature enacted § 16-243a. Section 16-243a (b) provides in relevant part: "Each electric public service company, municipal electric energy cooperative and municipal electric utility shall: (1) Purchase any electrical energy and capacity made available, directly by a private power producer or indirectly under subdivision (4) of this subsection . . . ."

Subsection (d) of § 16-243a provides: "When any person, firm or corporation proposes to enter into a contract to sell energy and capacity as a private power producer, an electric public service company, municipal electric energy cooperative or municipal electric utility shall respond promptly to

all requests and offers and negotiate in good faith to arrive at a contract which fairly reflects the provisions of this section and the anticipated avoided costs over the life of the contract. Upon application by a private power producer, the authority may approve a contract which provides for payment of less than the anticipated avoided costs if, considering all of the provisions, the contract is at least as favorable to the private power producer as a contract providing for the full avoided costs. The contract may extend for a period of not more than thirty years at the option of the private power producer if it has a generating facility with a capacity of at least one hundred kilowatts."

[3] The plaintiff sought a thirty year rate in order to attract investors to the project.

[4] The trial court concluded that "it is clear from a careful reading that the complaint makes no claim that [the] plaintiff is statutorily aggrieved by [PURA's] decision." The plaintiff now challenges that conclusion. Because we conclude that the plaintiff is classically aggrieved by PURA's decisions, we need not address the plaintiff's claim that it also is statutorily aggrieved.

[5] To be sure, the abnormal and convoluted format of the plaintiff's complaint presented difficulty in identifying the factual allegations upon which it was relying in asserting aggrievement.